Fahim **KAISER;** Faiza Fahim; Sheryar Kaiser; Anushay Fahim, **Petitioners,**

v.

John **ASHCROFT,** Attorney General, **Respondent.**

No. 03–71198.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 2, 2004.*

Filed Dec. 3, 2004.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Garish Sarin, Attorney, Los Angeles, California, for the petitioners.

Peter D. Keisler, Assistant Attorney General; Terri J. Scadron, Assistant Director; and Virginia M. Lum, Office of Immigration, Washington, D.C., for the respondent.

Before: REINHARDT, WARDLAW, and PAEZ, Circuit Judges.

WARDLAW, Circuit Judge.

Petitioners, Fahim Kaiser ("Kaiser"), his wife, and their two minor children, natives and citizens of Pakistan, petition for review of a decision of the Board of Immigration Appeals ("BIA") affirming the denial of their applications for asylum and withholding of removal. We hold that the BIA erred in denying asylum eligibility, but affirm the BIA's denial of withholding of deportation.

## BACKGROUND

In 2000, the Immigration and Naturalization Service initiated removal proceedings against Petitioners, charging them with being subject to removal from the United States as aliens who had overstayed their visas. Petitioners conceded removability, but applied for relief from removal on the basis of fear of persecution. In their application for asylum and withholding of removal, Petitioners explained that they fear persecution if returned to Pakistan because their lives were threatened by the Muttahida Quami Movement ("MQM"), a political party that has demonstrated its willingness to use violence to further its aims.

At the hearing before the Immigration Judge ("IJ"), Kaiser and his wife explained the basis for their fear of persecution. Kaiser served as a commissioned officer in the Pakistani Army from 1979 to 1995. In 1985, his battalion was transferred to Karachi, Pakistan, to control the explosive security situation in that area. While he was stationed in Karachi, Kaiser was placed on the MQM's "hit list" due to his instrumental role in apprehending and convicting several key MQM leaders. After being placed on the MQM's hit list, he was shot at on two separate occasions. On one of these occasions, Kaiser's "runner," or orderly, was shot and killed while traveling with him in a Jeep. In part due to his listing on the MQM's hit list, Kaiser was transferred to another post in 1989.

For the next six years, Kaiser was posted in Lahore and Kashmir, Pakistan. During this time, he did not experience any further entanglements with the MQM. After he retired from the military in 1995, Kaiser also resided in Rawalpindi, Pakistan, for two years without experiencing any difficulties associated with the MQM.

When Kaiser returned to Karachi in 1997, however, the MQM began to threaten him and his family once again. His wife received numerous harassing phone calls from an individual affiliated with the MQM. The calls soon escalated to death threats in which the caller specifically referred to Kaiser's past experience with the MQM and indicated Kaiser's continued presence on the MQM's hit list. The caller blamed Kaiser for the imprisonment of several prominent leaders of the MQM— all of whom were sentenced to death—and threatened to kill Kaiser and his family if he did not help the MQM establish these leaders' innocence and obtain their release. Although Petitioners changed their telephone number on at least one occasion, they continued to receive life-threatening phone calls. In addition, in August of 1998 Kaiser and his son were followed by MQM assassins in an apparent attempted kidnapping. On several occasions, Kaiser asked the local army for protection or assistance, but his requests were denied because he was no longer a member of the military. When a former colonel in Kaiser's housing compound was murdered after receiving threats similar to those made against Kaiser, Kaiser's family sold their home in Karachi and moved to Islamabad, Pakistan.

After moving to Islamabad, Kaiser and his family came to the United States. At one point during their stay in the United States, Kaiser's wife and children moved back to Islamabad to discover whether the family could avoid further threats by the MQM in that area of the country. Even though Islamabad is located on the opposite side of Pakistan from Karachi, the situation did not improve. Kaiser's wife received over 30 calls from the same individual who had threatened the family while they lived in Karachi. The caller threatened to rape Kaiser's wife and to kill the entire family, specifically stating that if Kaiser's son went to school, he would not return home. As a result of this renewed set of threats, Kaiser's wife and children returned to the United States and the entire family applied for asylum and withholding of deportation. Kaiser and his wife testified that they fear for their own safety as well as that of their children if they are returned to Pakistan.

Although the IJ did not question Petitioners' credibility, he ruled that Petitioners had not met their burden of proof to warrant asylum or withholding of deportation. First, the IJ explained that none of the threats against Petitioners had been carried out. Second, the IJ stated that Petitioners can safely relocate within Pakistan to avoid any further threats by the MQM. As a result, the IJ denied Petitioners' applications for asylum and withholding of removal.

Petitioners appealed the IJ's decision to the BIA. Reasoning that Petitioners "failed to establish past persecution" and "failed to establish that it would be unreasonable for them to relocate [within Pakistan]," the BIA affirmed the IJ's denial of Petitioners' applications for asylum and withholding of removal.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over a final removal order pursuant to 8 U.S.C. § 1252(a)(1). We review for substantial evidence the BIA's decision that Petitioners have not established eligibility for asylum. *Cardenas v. INS*, 294 F.3d 1062, 1065 (9th Cir.2002). We must uphold the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). The BIA's decision can be overturned "only where the evidence is such that a reasonable factfinder would be compelled to conclude that the requisite fear of persecution existed." *Ghaly v. INS*, 58 F.3d 1425, 1429 (9th Cir.1995). Because neither the IJ nor the BIA made negative credibility findings, we accept Petitioners' testimony as true. *Lim v. INS*, 224 F.3d 929, 933 (9th Cir.2000). We also review for substantial evidence the BIA's determination that Petitioners have failed to meet the higher burden required for withholding of removal. *Berroteran–Melendez v. INS*, 955 F.2d 1251, 1255 (9th Cir.1992).

## DISCUSSION

### I. Asylum

Section 208(a) of the Immigration and Nationality Act ("INA") affords the Attorney General discretion to grant political asylum to any alien deemed to be a "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is an alien who is unable or unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). Petitioners claim they have a well-founded fear of future persecution in Pakistan because of an imputed

political opinion.[1]

■ To establish asylum eligibility on the basis of a well-founded fear of future persecution, Petitioners' fear "must be both subjectively genuine and objectively reasonable." *Ghaly,* 58 F.3d at 1428. "The subjective component may be satisfied by credible testimony that the applicant genuinely fears persecution." *Prasad v. INS,* 47 F.3d 336, 338 (9th Cir.1995). Because the IJ found Petitioners' factual testimony regarding their fear of persecution to be credible, Petitioners satisfy the subjective element and our inquiry turns solely on the objective prong. *See Fisher v. INS,* 79 F.3d 955, 960–61 (9th Cir.1996). Petitioners bear the burden of meeting the objective component by demonstrating a well-founded fear of persecution through "credible, direct, and specific evidence in the record." *Id.* at 960.

■ We conclude that Petitioners met that burden. "To effect a well-founded fear, a threat need not be statistically more than fifty-percent likely; the Supreme Court has suggested that even a one-tenth possibility of persecution might effect a well-founded fear." *Lim,* 224 F.3d at 934–935 (citing *INS v. Cardoza–Fonseca,* 480 U.S. 421, 430, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). Contrary to the BIA's assertion, this case is not similar to *Quintanilla–Ticas v. INS,* 783 F.2d 955 (9th Cir.1986), in which we held that petitioners did not establish a well-founded fear of persecution. In that case, we held that "[t]here was no indication in the record that petitioners would be subject to persecution on the basis of Quintanilla–Ticas' past association with the military," and that, "[e]ven if petitioners would face some danger in their home town because of Quintanilla–Ticas' former military sta-

tus, deportation to El Salvador [did] not require petitioners to return to the area of the country where they formerly lived." *Id.* at 957. Here, by contrast, there is credible, direct, and specific evidence in the record that Kaiser was placed on the MQM's death list, that his entire family was repeatedly threatened with death, and that Kaiser and his son were followed by MQM members on at least one occasion in a fashion similar to that experienced by another ex-military officer before his murder by the MQM. The State Department Country Report in the record also suggests that the MQM remains an active organization that resorts to violence to accomplish its goals. All of this compels us to conclude that Petitioners' fear of future persecution in Pakistan is objectively reasonable. *See Lim,* 224 F.3d at 935. Therefore, Petitioners are eligible for asylum.

The BIA concluded, however, that Petitioners had not met their burden of proof for two reasons: (1) none of the threats against Petitioners had been carried out; and (2) Petitioners could safely relocate within Pakistan without incurring persecution. Neither of these reasons legally supports the BIA's determination that Petitioners did not possess a well-founded fear of future persecution in Pakistan.

■ First, that none of the threats against Petitioners have yet to be carried out does not render their fear unreasonable. Threats on one's life, within a context of political and social turmoil or violence, have long been held sufficient to satisfy a petitioner's burden of showing an objective basis for fear of persecution. *Desir v. Ilchert,* 840 F.2d 723, 729 (9th Cir.1988). "What matters is whether the group making the threat has the will or the ability to carry it out." *Bolanos–Her-*

---

1. Because we hold that the record compels a finding of a well-founded fear of future perse-

cution, we need not decide Petitioners' past persecution claim.

*nandez v. INS*, 767 F.2d 1277, 1285 (9th Cir.1984); *see also Rodriguez–Rivera v. INS*, 848 F.2d 998, 1005–06 (9th Cir.1988).

In support of its conclusion that Petitioners failed to establish a well-founded fear of future persecution in Pakistan, the BIA stated that although Petitioners "had been threatened from 1986 until 1999, ... none of the threats had been carried out." We have previously stated that, "[a]lthough relevant, a post-threat harmless period need not vanquish an asylum claim, particularly where significant evidence suggests that the threats are becoming more menacing." *Lim*, 224 F.3d at 935. Although Kaiser was first placed on the MQM's hit list in the late 1980s, the MQM did not begin to threaten him and his family directly until they moved back to Karachi in 1997. Over the next three years, the frequency and severity of these threats increased dramatically, Kaiser and his son were followed by assassins on at least one occasion, and one of Kaiser's colleagues who had received similar threats was murdered. This evidence, coupled with Petitioners' corroborative evidence, including a 1999 State Department Country Report and numerous articles illustrating the MQM's willingness to use violence to further its objectives, demonstrate that the MQM has the will and the ability to carry out the threats made against Petitioners. Therefore, contrary to the BIA's reasoning, that the threats made against Petitioners were not carried out while they were in Pakistan does not constitute substantial evidence supporting the denial of their asylum claim.

 Nor does substantial evidence support the BIA's alternative finding that Petitioners could relocate safely within Pakistan without facing persecution. An applicant is ineligible for asylum if the evidence establishes that "the applicant could avoid persecution by relocating to another part of the applicant's country of nationality ... if under all the circumstances it would be reasonable to expect the applicant to do so." 8 C.F.R. § 208.13(b)(2)(ii); *see also Melkonian v. Ashcroft*, 320 F.3d 1061, 1069–70 (9th Cir. 2003). Therefore, we must first ask whether an applicant could relocate safely to another part of the applicant's country of origin. *Knezevic v. Ashcroft*, 367 F.3d 1206, 1214 (9th Cir.2004). If the evidence indicates that the applicant could relocate safely, we next ask whether it would be reasonable to require the applicant to do so. *Id.* Where, as here, the applicant has not established past persecution, the applicant bears the burden of establishing that it would be either unsafe or unreasonable for him to relocate, unless the persecution is by a government or is government-sponsored. *See* 8 C.F.R. § 208.13(b)(3)(i); *Cardenas*, 294 F.3d at 1066. "The reasonableness of internal relocation is determined by considering whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and family ties." *Knezevic*, 367 F.3d at 1214 (citing 8 C.F.R. § 1208.13(b)(3)).

The BIA found that Petitioners could relocate safely within Pakistan based on their description of three different areas—Lahore, Kashmir, and Rawalpindi—where they did not experience any difficulties with the MQM. Although it is true that Petitioners lived peacefully in Lahore, Kashmir, and Rawalpindi, they lived in those areas *before* they began to receive life-threatening phone calls in 1997. After that time, Petitioners received threatening phone calls in both Karachi and Islamabad, Pakistan. The logical conclusion from this evidence is that Petitioners received

threats in certain areas of Pakistan, but not others, due to the timing and sequence of events, not the inability of the MQM to reach Petitioners.

In any event, the record evidence demonstrates that Petitioners could not live safely in Lahore, Kashmir, or Rawalpindi if they were to return to Pakistan today. Petitioners lived in two of those three areas while Kaiser served in the military and enjoyed the protection that such service affords—protection that the military now refuses Kaiser and his family. Moreover, Petitioners received life-threatening phone calls in both Karachi and Islamabad, two cities located on opposite sides of Pakistan from one another and separated by almost 700 miles. Thus, the evidence compels the conclusion that Petitioners could not relocate safely anywhere in Pakistan, much less Lahore, Kashmir, or Rawalpindi. Indeed, while describing her fear of returning to Pakistan, Mrs. Kaiser stated, "I'm afraid for myself. I'm afraid for my husband's life. I'm afraid for my kids. *Because no matter what ...*, they'll get hold of you one way or the other." (emphasis added.)

Therefore, we hold that there is no evidence in the record to indicate that Petitioners could relocate safely within Pakistan. Indeed, all the record evidence points to the conclusion that relocation within Pakistan would be unsafe. Petitioners received numerous threatening phone calls in Pakistan, even after they left the country altogether and returned months later to a different location on the opposite side of the country. Because the threats occurred from one end of Pakistan to the other, we are convinced that there is no area in Pakistan where Petitioners would be free from persecution by the MQM. Because Petitioners met their burden of proving that internal relocation would be unsafe, we need not determine whether it would be reasonable to require them to do so. *See Knezevic,* 367 F.3d at 1214.

## II. Withholding of Deportation

 Having found no substantial evidence underlying the BIA's asylum determination, we turn to its conclusion that Petitioners did not meet their burden for the mandatory remedy of withholding of deportation. In contrast to asylum, where the "possibility" of persecution is sufficient, to warrant withholding of deportation, Petitioners must show that it is more probable than not that they will face persecution on account of a protected ground upon their deportation to Pakistan. *Njuguna v. Ashcroft,* 374 F.3d 765, 772 (9th Cir.2004). Although Petitioners have a reasonable fear of persecution, "we cannot say that such persecution *will* happen, in the sense of being more likely than not." *Lim,* 224 F.3d at 938. As noted by the BIA, Petitioners lived in Pakistan without harm for over ten years after Kaiser was first placed on the MQM's hit list. We do not hold that threats can never compel a finding of a clear probability of persecution. We merely hold that, under the circumstances of this case, the factors cited by the BIA provide substantial evidence to mitigate the risk in this case to something below fifty percent.

## CONCLUSION

Because Kaiser and his family have a well-founded fear of persecution in Pakistan and there is no evidence in the record that they could relocate safely to another part of the country, we grant the petition with respect to Petitioners' asylum claim and remand to the BIA. On remand, the BIA shall, on behalf of the Attorney General, exercise discretion regarding whether to grant asylum. *See Ge v. Ashcroft,* 367 F.3d 1121, 1127 (9th Cir.2004). However, because substantial evidence does not com-

pel us to find that Petitioners have met the higher burden for withholding of deportation, we deny the petition insofar as it requests such relief.

**GRANTED IN PART; DENIED IN PART; REMANDED.**