**Mee Hua OEY; et al., Petitioners,**

v.

**Alberto GONZALES,\* Attorney General, Respondent.**

No. 03–71740.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2004.\*\*

Decided April 4, 2005.

Joseph S. Porta, Law Offices of Cohen & Kim, Los Angeles, CA, for Petitioners.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, John S. Hogan, Esq., Luis E. Perez, Esq., DOJ—U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: B. FLETCHER, NOONAN, and THOMAS, Circuit Judges.

MEMORANDUM \*\*

Mee Hua Oey, an ethnic Chinese, Christian woman from Indonesia, petitions for review of the denial of her claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Oey's husband, Joko Surisno, and two of their three children, Scott William Surisno and Clifford Surisno, apply

---

\* Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

for asylum as derivative beneficiaries of Oey's claim.[1] Oey claims that she has a well-founded fear of future persecution on account of ethnicity and religion. The immigration judge ("IJ") found Oey's testimony credible, but held that her experiences of harassment and discrimination do not constitute past persecution and that the evidence of current conditions in Indonesia does not establish that her fear of future persecution is well-founded. The BIA summarily affirmed. We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition for review as to the asylum claim, deny the petition as to withholding of removal and CAT relief, and remand so that the Attorney General may exercise his discretion to grant asylum.

"Because the BIA summarily affirmed the IJ's judgment without opinion, our review is of the IJ's decision." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1100 (9th Cir. 2004). We review the denial of an application for asylum on the ground that the alien has not established eligibility for asylum for substantial evidence. *Cardenas v. I.N.S.*, 294 F.3d 1062, 1065 (9th Cir.2002). In doing so, we accept Oey's testimony and her husband's testimony as true because the IJ found them both credible and the BIA made no contrary finding. *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119 (9th Cir. 2004).

In addition to her own testimony and her husband's testimony, Oey provided numerous articles and reports regarding country conditions in Indonesia. After her hearing, Oey submitted for the first time on appeal to the BIA an additional set of documents, including two State Department reports and various news articles, updating country conditions. The government argues that these materials were not properly submitted because Oey failed to file a motion requesting that the BIA remand the case to the IJ for further fact-finding pursuant to 8 C.F.R. § 1003.1(d)(3)(iv)(2003). However, this same regulation contains an exception that permits the BIA to take "administrative notice of commonly known facts such as current events or the contents of official documents." *Id.* To the extent the documents at issue fall within this exception, we hold that we may consider the supplemental materials.

Oey's documentary evidence describes the history and current pattern of persecution against ethnic Chinese–Indonesians that we describe in detail in *Sael v. Ashcroft*, 386 F.3d 922 (9th Cir.2004), and *Lolong v. Gonzales*, 400 F.3d 1215 (9th Cir. 2005). Oey also provided evidence of more recent events which establish that anti-Christian violence continues to escalate in Indonesia. For example, there were numerous bombings of churches on or around Christmas day in 2000. State Department reports from 2000 and 2001 confirm that conditions have not improved, and, as we explained in *Lolong*, that the rise in religious violence is, at least in part, intertwined with anti-Chinese sentiment and increases the risk of persecution faced by Chinese Christians. *See Lolong*, 400 F.3d at 1221.

Oey's personal experiences reflect the historical cycle of anti-Chinese violence in Indonesia. When Oey was a child, the military raided her grade school, and she witnessed the soldiers beat her teachers and ransack and set fire to the facilities. One year later, Oey was participating in the burial procession of a prominent member of the ethnic Chinese–Indonesian community when the Indonesian military opened fire on the mourners. During the most recent eruption of anti-Chinese violence, Oey's home and her husband's office were stoned as her neighborhood was

---

1. Oey and Surisno's third child is a U.S. citizen.

overrun with mobs shouting anti-Chinese death threats. On another occasion, while Oey was attending mass, Oey's church was attacked by rioting ethnic-Indonesians.

Substantial evidence compels us to conclude that Oey is a member of a significantly disfavored group and that she met the "comparatively low" individualized showing of risk required by *Sael,* 386 F.3d at 927 (quoting *Hoxha v. Ashcroft,* 319 F.3d 1179, 1183 (9th Cir.2003)).[2] Oey met her individualized-risk burden by establishing that, as an ethnic Chinese Christian woman, she is a member of two sub-groups that are subject to a particularized risk of persecution. *See Lolong,* 400 F.3d at 1221.[3] Accordingly, we hold that Oey is eligible for asylum. We remand so that the Attorney General may exercise his discretion to grant asylum. However, we deny the petition for withholding of removal and CAT relief.

PETITION GRANTED IN PART AND DENIED IN PART, REMANDED.

---

**2.** On November 4, 2003, Oey filed a letter with the clerk pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure in which she cites *Sael v. Ashcroft* for the proposition that a member of the ethnic Chinese minority in Indonesia "must demonstrate a 'comparatively low' level of individualized risk in order to prove that she has a well-founded fear of future persecution." 386 F.3d at 927.

**3.** Because we hold that the record compels a finding of a well-founded fear of future persecution, we need not decide Oey's past persecution claim. *See Kaiser v. Ashcroft,* 390 F.3d 653, 658 (9th Cir.2004).

