**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAN BAHADUR TAMANG,

                *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

                *Respondent.*

No. 08-73550

Agency No.
A098-840-654

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 10, 2009*
Seattle, Washington

Filed March 16, 2010

Before: Ronald M. Gould and Richard C. Tallman,
Circuit Judges, and Roger T. Benitez,** District Judge.

Opinion by Judge Benitez

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Roger T. Benitez, United States District Judge for the
Southern District of California, sitting by designation.

## COUNSEL

Patrick Cantor, Buttar & Cantor LLP, Tukwila, Washington, for petitioner Pan Bahadur Tamang.

Tony West, Acting Assistant Attorney General, Civil Division, Terri J. Scadron, Assistant Director, and Kathryn Deangelis, Trial Attorney, Office of Immigration Litigation, for respondent Eric H. Holder Jr.

## OPINION

BENITEZ, District Judge:

Petitioner Pan Bahadur Tamang petitions for review of the Board of Immigration Appeals' ("BIA's") order dismissing his appeal of an immigration judge's ("IJ's") denial of his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). We dismiss the petition for review as to Tamang's asylum claim on the grounds that the claim was untimely. As to Tamang's remaining claims, we have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

## BACKGROUND

Tamang is a native and citizen of Nepal. On July 18, 1999, Tamang entered the United States on a visitor visa. When Tamang's visa expired on January 17, 2000, Tamang remained in, and at all relevant times has remained in, the United States. More than five years later, on August 12, 2005, Tamang filed an application ("Application") for asylum, withholding of removal, and protection under CAT.

Tamang's Application includes a declaration stating, among other things, that Tamang's family was threatened by Maoists and Maoists broke Tamang's brother's leg during an altercation. This altercation apparently took place in 2002, i.e., three years after Tamang arrived in the United States. The record shows Tamang's brother entered the United States on June 18, 2002 and was later granted asylum in December 2005.

On January 23, 2007, a hearing was held on Tamang's Application. At the hearing, Tamang conceded he failed to file a timely petition for asylum. Tamang testified he did not file an earlier application because an attorney told him it was not necessary since Tamang was not personally attacked. On cross-examination, Tamang testified that he got this advice from a "friend," whose name he did not know, and that he recently decided to file the Application because his brother obtained asylum in an earlier proceeding.

Tamang also testified that his family had been active in Nepalese politics: Tamang, his brother, and his father were members of the Nepali Congress Party, and Tamang's father was the president of the Village Development Committee. Tamang testified that, after the altercation with Maoists in 2002, his parents moved to India. However, in September 2006, Tamang's parents returned to Nepal and have not had problems with Maoists since their return. Tamang also testified that he has not been personally harmed by Maoists and,

in fact, he has had no contact with Maoists at all. Tamang also conceded that the Nepali Congress Party became the head of government in 2006 and a ceasefire was declared with the Maoists.

Nevertheless, Tamang testified he cannot safely return to Nepal because he believes Maoists are looking for him.

At the conclusion of the hearing, the IJ issued an order denying all relief sought by Tamang. Specifically, the IJ found that Tamang's asylum application was untimely and failed to demonstrate changed or extraordinary circumstances excepting the application from the one year statute of limitation. The IJ found incredible Tamang's belief that he did not have to file his application within the one-year period and that he had been advised against filing by an attorney. According to the IJ, Tamang is a relatively well-educated individual who could be expected to seek out further advice, especially given his fear of persecution and the knowledge of his family's suffering as early as 2002, i.e., three years before Tamang filed his asylum application.

The IJ further determined that Tamang had not established past persecution in Nepal, noting that Tamang's brother had "suffered significant physical violence," but that Tamang was in the United States at that time and had not made "any claim that he himself had any interaction with them." The IJ further noted that even Tamang's family had returned to Nepal and have not had any interaction with Maoists since 2002.

The IJ also found that there had been a change in country conditions that mitigated against any fear of future persecution, especially in light of Tamang's political party being the new majority party in the Nepalese government. The IJ further noted that asylum seekers such as Tamang "can be expected to relocate to a community elsewhere in their country," just as his family had done.

The IJ also denied Tamang's application for CAT protection, finding Tamang had not demonstrated a risk of torture by the government if he were to return to Nepal and noting that Tamang's own political party now forms the government in Nepal.

On July 31, 2008, the BIA affirmed the IJ's decision and dismissed Tamang's appeal. The BIA adopted the IJ's decision in its entirety. This timely appeal ensued.

## DISCUSSION

In upholding the IJ's denial of Tamang's Application, the BIA "adopt[ed] and affirm[ed] the Immigration Judge's decision," citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994). We, therefore, look through the BIA's decision and treat the IJ's decision as the final agency decision for purposes of this appeal. *Gonzalez v. INS*, 82 F.3d 903, 907 (9th Cir. 1996).

We review the IJ's factual findings for substantial evidence. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Under the substantial evidence test, we must uphold the IJ's findings, "if supported by reasonable, substantial and probative evidence on the record considered as a whole." *Id.* (internal quotation marks omitted).

We review de novo questions of law and legal conclusions. *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003).

We review separately the requests by Tamang for asylum, withholding of removal and CAT protection.

## I. ASYLUM

**[1]** An asylum application must be filed within one year of the petitioner's arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). One exception, however, is where the peti-

tioner demonstrates "extraordinary circumstances relating to the delay." *Id*. § 1158(a)(2)(D). The Code of Federal Regulations sets forth several categories of "extraordinary circumstances" for purposes of asylum relief. 8 C.F.R. § 1208.4(a)(5)(i)-(vi). The category relevant here is "ineffective assistance of counsel." *Id*. § 1208.4(a)(5)(iii). Tamang appeals the IJ's finding that he failed to demonstrate ineffective assistance of counsel.

## A.   JURISDICTION

As a threshold matter, we must consider whether we have jurisdiction to review the IJ's finding. The short answer is yes.

**[2]** We address this issue because two statutory provisions provide that no court has jurisdiction to review a determination of the IJ or BIA relating to the one-year bar or the exceptions for changed or extraordinary circumstances thereunder. *See* 8 U.S.C. §§ 1158(a)(3) and 1252(a)(2)(B). In 2005, however, Congress passed the REAL ID Act which restored our jurisdiction, but only for those decisions invoking constitutional claims or questions of law. *Id*. § 1252(a)(2)(D); *see also Husyev v. Mukasey*, 528 F.3d 1172, 1178-79 (9th Cir. 2008). We must, therefore, determine whether Tamang's ineffective assistance claim involves a question of law.

**[3]** "Questions of law," as that phrase is used under the REAL ID Act, extends to questions involving the application of statutes or regulations to undisputed facts, also known as mixed questions of fact and law. *Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007); *see also Pullman-Standard v. Swint*, 456 U.S. 273, 289-90 & n.19 (1982) (mixed questions of law and fact are those "in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated").

**[4]** Ninth Circuit authority also provides that the "ineffective assistance" prong of the extraordinary circumstances exception is treated as a mixed question of law and fact, as long as the relevant underlying facts are not disputed. *See, e.g., Ghahremani v. Gonzales*, 498 F.3d 993, 999 (9th Cir. 2007) (noting same in the context of an appeal of the BIA's denial of a motion to reopen deportation proceedings). However, until now, there have been no published decisions specifying which underlying facts cannot be disputed for purposes of this determination.

**[5]** At least one Ninth Circuit case has held, albeit under a different category of extraordinary circumstances, that jurisdiction existed where the following facts were not disputed: the date of petitioner's arrival; the expiration of a petitioner's legal status; and the petitioner's application for asylum. *Husyev*, 528 F.3d at 1179 (finding that petitioner's extraordinary circumstances exception based on the "reasonable period" prong was a mixed question of law and fact because these same facts were not disputed). Although not specifically stated, those facts pertain to the elements necessary to prove the extraordinary circumstances category at issue in that case, i.e., that the petitioner had maintained lawful immigration status until a reasonable time before filing his or her asylum application per 8 C.F.R. § 1208.4(a)(5)(iv). Although the reasonable period category is not at issue in this case, applying the *Husyev* concept here, it is clear Tamang's ineffective assistance of counsel claim is a mixed question of law and fact.

To satisfy an ineffective assistance of counsel claim, a petitioner must: (1) provide an affidavit detailing the agreement with counsel and any representations counsel did or did not make regarding the agreement; (2) inform counsel of the alleged ineffectiveness and provide an opportunity to respond; and (3) file a complaint with the appropriate disciplinary authorities, or if no such complaint was filed, explain why. *Id.* § 1208.4(a)(5)(iii)(A)-(C).

**[6]** Tamang does not dispute that he failed to satisfy these factual elements; rather, as more fully discussed below, Tamang argues he should not be required to satisfy these elements. As such, the relevant facts are undisputed and, pursuant to Ninth Circuit authority, Tamang's claim is a mixed question of law and fact. Accordingly, we find we have jurisdiction to review the IJ's finding that Tamang's asylum application was time-barred.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

**[7]** As noted, Tamang argues he is excepted from the one-year limitation period based on alleged "ineffective assistance of counsel." To qualify for this exception, a petitioner must (1) provide an affidavit detailing the agreement with counsel and any representations counsel did or did not make regarding the agreement; (2) inform counsel of the allegation of ineffectiveness and provide an opportunity to respond; and (3) file a complaint with the appropriate disciplinary authorities, or if no such complaint was filed, explain why. 8 C.F.R. § 1208.4(a)(5)(iii)(A)-(C). Additionally, a petitioner must file his or her untimely application within a reasonable period given the circumstances. *Id*. §§ 208.4(a)(5) and 1208.4(a)(5).

These elements are a codification of earlier common law based on *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988) and followed by this Circuit, as well as several sister circuits. *See, e.g., Zheng v. U.S. Dep't of Justice*, 409 F.3d 43, 46 (2nd Cir. 2005); *Hamid v. Ashcroft*, 336 F.3d 465, 469 (6th Cir. 2003); *Lopez v. INS*, 184 F.3d 1097, 1100 (9th Cir. 1999).

**[8]** Here, it is undisputed Tamang failed to satisfy these conditions. Rather, Tamang argues strict compliance with these conditions is not necessary. Tamang cites the following cases to support his argument: *Castillo-Perez v. INS*, 212 F.3d 518 (9th Cir. 2000); *Lo v. Ashcroft*, 341 F.3d 934 (9th Cir. 2003); and *Rojas-Garcia v. Ashcroft*, 339 F.3d 814 (9th Cir. 2003).

**[9]** As noted by Tamang, these cases held that strict compliance with *Lozada* was not required because, under the circumstances of those cases, the ineffectiveness of counsel was plain on its face. *Castillo-Perez*, 212 F.3d at 526 (ineffectiveness was plain on its face where petitioner's former counsel misrepresented to petitioner that his application had been filed and petitioner later filed a declaration complying with *Lozada*); *Lo*, 341 F.3d at 938 (ineffectiveness was plain on its face where former counsel mis-calendared the removal hearing, petitioner failed to appear at the hearing, and declarations were filed that complied with the first two prongs of *Lozada*); *Rojas-Garcia*, 339 F.3d at 824-25 (ineffectiveness was plain on its face where former counsel forgot to file the brief because he was transitioning to a new job and taking over a former colleague's caseload, and declarations were filed satisfying the first prong of *Lozada*).

**[10]** Here, however, the ineffectiveness of Tamang's former counsel's assistance is not plain on its face. First, Tamang could not remember the name of his former counsel or the dates or circumstances of any purported contact with his former counsel. Indeed, it is not even clear Tamang spoke with an attorney, as opposed to a mere consultant or friend whose opinion Tamang cannot rely upon for purposes of the ineffective assistance exception. *See generally Albillo-DeLeon v. Gonzales*, 410 F.3d 1090, 1099 (9th Cir. 2005). Additionally, unlike the cases upon which Tamang relies, Tamang has not complied, either timely or untimely, with any of the *Lozada* requirements.

Rather, it appears Tamang's Application presents the very circumstances for which the *Lozada* requirements, and now 8 C.F.R. § 1208.4(a)(5)(iii)(A)-(C), were intended. The goal of *Lozada* was to provide a more objective basis from which to assess the veracity of the substantial number of ineffective assistance claims asserted by asylum applicants and to hold attorneys to appropriate standards of performance. *See Lozada*, 19 I. & N. Dec. at 639-40. Where these goals are fur-

thered, courts have unanimously upheld the requirements set forth in *Lozada. See, e.g., Rojas-Garcia*, 339 F.3d at 824-25; *Lo*, 341 F.3d at 937-38. As we have stated, "*Lozada* is intended to ensure both that an adequate factual basis exists in the record for an ineffectiveness complaint and that the complaint is a legitimate and substantial one." *Castillo-Perez*, 212 F.3d at 526.

**[11]** Here, without Tamang's compliance with the *Lozada* elements, as codified in 8 C.F.R. § 1208.4(a)(5)(iii)(A)-(C), it is impossible to determine whether Tamang's ineffective assistance of counsel claim has merit. By failing to provide any information regarding his purported former counsel, Tamang has also failed to provide any other independent basis from which to analyze his claim. Therefore, as recognized by the IJ, Tamang's failure to satisfy the *Lozada* requirements was fatal to Tamang's claim for ineffective assistance of counsel.

Even if "extraordinary circumstances" were found, Tamang failed to file his Application within a reasonable period after being on notice of his purported former counsel's error. Substantial evidence on the record supports the IJ's finding that Tamang was on notice of the need to file his Application in at least 2000 or 2001 and was a relatively well-educated individual such that one could expect Tamang to seek other advice. This is especially true if, as Tamang claims, he had a great fear of returning to his home country. Nonetheless, Tamang did not file his Application until 2005, at least four years later. As such, the requirements of 8 U.S.C. § 1158(a)(2)(D) and 8 C.F.R. § 1208.4(a)(5) for exception to the one-year statute of limitation are not met.

**[12]** In light of these circumstances, we hold that substantial evidence supports the IJ's dismissal of the asylum claim.

## II.   WITHHOLDING OF REMOVAL

Withholding of removal requires the petitioner to demonstrate his or her "life or freedom would be threatened in that

country because of the [petitioner's] race, religion, national-ity, membership in a particular social group, or political opin-ion." 8 U.S.C. § 1231(b)(3). Similar to asylum, a petitioner may establish eligibility for withholding of removal (A) by establishing a presumption of fear of future persecution based on past persecution, or (B) through an independent showing of clear probability of future persecution. 8 C.F.R. § 1208.16(b)(1) and (2).

**[13]** Unlike asylum, however, the petitioner must show a "clear probability" of the threat to life or freedom if deported to his or her country of nationality. *INS v. Stevic*, 467 U.S. 407, 429-30 (1984). The Supreme Court has defined "clear probability" to mean it is "more likely than not" that the peti-tioner would be subject to persecution on account of one of the protected grounds. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 429 (1987). The clear probability standard is more strin-gent than the well-founded fear standard for asylum. *Khunaverdiants v. Mukasey*, 548 F.3d 760, 767 (9th Cir. 2008).

## A.    PAST PERSECUTION

Establishing a presumption of fear of future persecution arising from past persecution is one way to obtain withhold-ing of removal. This presumption may be rebutted where the IJ finds changed country conditions mitigate against the threat of persecution or the petitioner could reasonably be expected to relocate to a different part of his or her country. 8 C.F.R. §§ 208.16(b)(1)(i) and 1208.16(b)(1)(i).

Tamang argues the IJ erred in failing to deem threats and violence against his family as past persecution of Tamang himself; finding changed conditions in Nepal mitigate against any fear of persecution if Tamang returned to Nepal; and find-ing Tamang could reasonably be expected to relocate else-where in Nepal.

### 1. *Threats Against Family*

**[14]** Under Ninth Circuit law, a petitioner claiming past persecution must demonstrate "[p]articularized individual persecution, not merely conditions of discrimination," in order to qualify for withholding of removal. *Prasad v. INS*, 47 F.3d 336, 340 (9th Cir. 1995); *see also Sanchez-Trujillo v. INS*, 801 F.2d 1571, 1574 (9th Cir. 1986). While we have recognized that harm to a petitioner's close family members or associates may be relevant to assessing whether the petitioner suffered past persecution, we have not found that harm to others may substitute for harm to an applicant, such as Tamang in this case, who was not in the country at the time he claims to have suffered past persecution there. *See, e.g., Mashiri v. Ashcroft*, 383 F.3d 1112, 1121 (9th Cir. 2004) (finding that petitioner satisfied her showing of particularized persecution based on several acts of violence and discrimination against her family members, which petitioner personally dealt with on a day-to-day basis.); *Rodriguez-Rivera v. INS*, 848 F.2d 998, 1005-06 (9th Cir. 1998) (petitioner's allegation that he faced persecution based on his refusal to join the army and subsequent flight to avoid joining the army was not sufficient to establish persecution for purposes of withholding of removal).

The cases cited by Tamang are factually inapposite. In *Kaiser v. Ashcroft,* 390 F.3d 653, 656 (9th Cir. 2004), the petitioner was an officer in the Pakistani army and had been placed on a hit list by a violent political party based on petitioner's role in apprehending and convicting several of the party's leaders. The petitioner personally suffered two attempts on his life but then moved elsewhere in Pakistan and lived there without any further trouble. When the petitioner tried to return to his prior hometown, threats of future harm to him and his family resumed, at which point petitioner and his family moved to the United States. *Id*. at 656-67.

The BIA denied petitioner's request for withholding of removal because the threats to the petitioner had not been car-

ried out and the petitioner could safely relocate elsewhere in Pakistan; therefore, the higher standard applicable to withholding of removal had not been satisfied. *Id.* at 657. The Ninth Circuit upheld this determination, but remanded the case to the BIA for further determination on the less stringent standard applicable to asylum because, among other things, the petitioner had suffered personal injury before the threats and, therefore, the threats could establish a "well-founded fear" of persecution for asylum purposes. *Id.* at 658-59.

Here, unlike in *Kaiser*, Tamang did not suffer any personal persecution. Additionally, as noted, Tamang's claim for asylum is time-barred. Therefore, unlike in *Kaiser*, there is no question of whether Tamang could have satisfied the less stringent standard of "well-founded" fear of persecution for asylum purposes. If anything, because the court in *Kaiser* found withholding of removal was not warranted, *Kaiser* supports the conclusion that the IJ did not err in denying Tamang's withholding of removal in this case.

The other cases cited by Tamang are likewise unavailing. In *Bolanos-Hernandez v. INS*, 767 F.2d 1277 (9th Cir. 1984), the petitioner had suffered threats of violence against him personally, while he was residing in his native country. *Id.* at 1280. Those circumstances are not present here, as Tamang testified he did not suffer any personal persecution. In *Rodriguez-Rivera,* 848 F.2d at 1005-06, similar to this case, the petitioner asserted a general fear of persecution based on petitioner's refusal to join the army in his native country and subsequent flight to avoid joining the army. The petitioner also alleged threats of violence by guerrillas against him personally. We held that such evidence does not establish past persecution for purposes of withholding of removal. *Id.* at 1005-06.

Tamang emphasizes that his brother was granted asylum and argues that, absent similar relief for Tamang, the possibility of inconsistent asylum treatment exists. We first note that,

unlike Tamang, Tamang's brother filed a timely asylum application and, therefore the less stringent standard of "well-founded fear" applied. Second, we note that Tamang's brother, unlike Tamang, suffered direct persecution by Maoists: Tamang's brother was at the family's home in Nepal when Maoists visited the family in 2002, and Tamang's brother's leg was broken by Maoists in the ensuing altercation.

These circumstances are distinct from the circumstances presented in *Njuguna v. Ashcroft*, 374 F.3d 765 (9th Cir. 2004) and *Wang v. Ashcroft*, 341 F.3d 1015 (9th Cir. 2003). Unlike in *Njunga* and *Wang*, having already moved to the United States at the time of the alleged persecution, Tamang was far removed from the persecution that his brother suffered and was not directly impacted in any way. Additionally, this is not a situation where two different IJs could reasonably differ; rather, the IJ in this case is the same IJ who granted asylum to Tamang's brother. Therefore, the IJ had personal knowledge of his brother's application and, in fact, took extra time to note on the record the many differences between Tamang's and his brother's applications and the bases for awarding different treatment.

[15] In light of the above, we find substantial evidence supports the IJ's finding that Tamang did not suffer past persecution.

## 2. *Changed Country Conditions*

[16] The IJ is permitted to consider changed country conditions pursuant to 8 C.F.R. § 1208.16(b)(1)(A) (stating that a presumption of threat to life or freedom can be rebutted if the IJ finds, upon a preponderance of evidence, that "[t]here has been a fundamental change in circumstances . . ."). Even if Tamang had suffered past persecution, we find substantial evidence supports the IJ's finding that changed conditions in Nepal mitigate against any fear of persecution if Tamang returned to Nepal.

The IJ's decision on changed country conditions was based, in large part, on Tamang's testimony that no member of his family has had any contact with Maoists since the altercation in 2002; Tamang's family returned to Nepal in 2006 and continues to live there without incident; and the political party with which Tamang and his family were associated now forms the government of Nepal. These facts came from Tamang's own testimony and were not disputed. Respondent also produced newspaper articles showing the general change in political conditions in Nepal. The IJ listed the reasons for his finding and explained how these reasons related directly to Tamang's ability to return to Nepal without fear. As such, we find substantial evidence supports the IJ's decision.

Tamang also contests the IJ's adverse credibility finding. With respect to changed country conditions, the only adverse credibility finding made by the IJ was the IJ's statement, "I do not find credible the respondent's repeated statement 'nothing has changed.' " Even if this finding formed a basis of the IJ's decision, substantial evidence supports the IJ's adverse credibility finding.

**[17]** We recently had the opportunity to apply the REAL ID Act's new standard for adverse credibility findings in *Shrestha v. Holder*, 590 F.3d 1034, 1039-48 (9th Cir. 2010). There, we noted the new standard enacted by Congress provides that any inaccuracies, omissions of detail, or inconsistencies found by the IJ, regardless of whether they go to the "heart" of a petitioner's claim, may support an adverse credibility finding. *See id.* at 1040-43 (citing 8 U.S.C. § 1158(b)(1)(B)(iii)). However, we followed several other circuits in cautioning that an IJ cannot selectively examine evidence in determining credibility, but rather must present a reasoned analysis of the evidence as a whole and cite specific instances in the record that form the basis of the adverse credibility finding. *Id.* at 1041-42.

**[18]** Applied here, we find the IJ's adverse credibility finding is supported by the record. The IJ cited the discrepancy

between Tamang's testimony that nothing had changed and the evidence produced by Respondent and supplied by Tamang's own testimony showing that political conditions had changed and Tamang's political party is currently the head of the government. The IJ stated specific and cogent reasons why Tamang's statement "nothing has changed" was unavailing. As such, we find substantial evidence supports the IJ's adverse credibility ruling.

In light of the foregoing, we need not address the IJ's determination that Tamang could reasonably be expected to relocate elsewhere, as that issue has been rendered moot.

## B.  CLEAR PROBABILITY OF FUTURE PERSECUTION

[19] A petitioner may also qualify for withholding of removal based on a clear probability of future persecution. To satisfy this standard, a petitioner must demonstrate that his or her fear is "both subjectively genuine and objectively reasonable." Similar to the above, a perceived fear of future persecution may be rebutted if the petitioner could relocate elsewhere in his or her native country, and it would be reasonable to expect the petitioner to do so. 8 C.F.R. § 1208.16(b)(2).

"An immigrant may demonstrate that her fear is subjectively genuine merely by credibly testifying that [s]he genuinely fears persecution." *Rodas-Mendoza v. INS*, 246 F.3d 1237, 1239 (9th Cir. 2001) (internal quotation marks omitted). Here, Tamang testified that based on the persecution suffered by his family, Tamang has a fear of future persecution if returned to Nepal. Tamang has, thus, satisfied the subjective prong of this analysis.

However, the IJ found Tamang's fear of future persecution was not objectively reasonable. Tamang testified his parents returned to Nepal in 2006 and his family has had no problems with Maoists since their return. "It is well established in this

court that an alien's history of willingly returning to his or her home country militates against a finding of past persecution or a well-founded fear of future persecution." *Loho v. Mukasey*, 531 F.3d 1016, 1017-18 (9th Cir. 2008) (quoting *Kumar v. Gonzales*, 439 F.3d 520, 524 (9th Cir. 2006) and *Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1091 (9th Cir. 2005)). "We have also held that a petitioner's fear of future persecution 'is weakened, even undercut, when similarly-situated family members' living in the petitioner's home country are *not* harmed." *Sinha v. Holder*, 564 F.3d 1015, 1022 (9th Cir. 2009) (citing *Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001)). Here, because Tamang's fear of future persecution rests solely upon threats received by his family, it is especially significant that his family voluntarily returned to Nepal and continues to live there unharmed, after being threatened by Maoists in 2002.

Tamang's fear of future persecution is further tempered by evidence showing changed country conditions in Nepal, as noted above. Specifically, the IJ noted that the Nepalese king reinstated the 1999 parliament which was democratically elected and led by Tamang's political party. The IJ further noted that the Maoists declared a ceasefire in April 2006 and had joined other parties in parliament. Tamang, notably, conceded these facts.

**[20]** To rebut the evidence, Tamang cited to vague threats made against his family. Although a reasonable factfinder may find these threats relevant, the threats do not compel a finding of clear probability of future persecution. Therefore, we find that, when viewing the record as a whole, substantial evidence exists to support the IJ's finding that Tamang's perceived fear of future persecution is not objectively reasonable.

## III.   CAT PROTECTION

We finally turn to the IJ's denial of CAT protection. To support his request for CAT protection, Tamang relies on the

same evidence and arguments submitted in support of asylum and withholding of removal.

**[21]** To qualify for CAT protection, a petitioner must show it is more likely than not he or she would be tortured if removed to the country of origin. 8 C.F.R. § 208.16(c)(2); *Morales v. Gonzales*, 478 F.3d 972, 983 (9th Cir. 2007). The same "more likely than not" standard applies to CAT protection as it does to withholding of removal; however, for CAT protection, the harm feared must meet the definition of torture. Additionally, unlike withholding of removal under the Immigration and Nationality Act, withholding of removal under CAT is based entirely on an objective basis of fear; there is no subjective component to a petitioner's fear of torture. Therefore, evidence of relevant country conditions is extremely important, as is the ability of Tamang to safely relocate to another part of his country of origin. 8 C.F.R. § 208.16(c)(3).

**[22]** For the same reasons stated above under withholding of removal, the record does not compel the conclusion that Tamang merits CAT protection. Tamang fails to present evidence or even allege that he would most likely be tortured by or with the acquiescence of a government official or other person acting in an official capacity. 8 C.F.R. § 1208.18(a)(1). As such, we hold a reasonable factfinder would not be compelled to find Tamang eligible for CAT protection. We conclude that substantial evidence supports the IJ's finding that Tamang does not merit CAT protection.

## CONCLUSION

We **DISMISS IN PART, DENY IN PART** Tamang's petition for review of the IJ's denial of asylum, withholding of removal, and CAT protection.