
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TETYANA SERGEEVNA LOMTYEVA, <br><br> Petitioner, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, Attorney General, <br><br> Respondent. | No.  14-70424 <br><br> Agency No. A089-303-425 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 12, 2017
San Francisco, California

Before:     WALLACE, TASHIMA, and WATFORD, Circuit Judges.

Tetyana Sergeevna Lomtyeva, a citizen of Ukraine, petitions for review of

the Board of Immigration Appeals' ("BIA") order upholding an immigration

judge's ("IJ") denial of her requests for asylum, withholding of removal, and relief

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

under the Convention Against Torture ("CAT").  We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we grant the petition for review.

Lomtyeva entered the United States in August 2008 on a temporary visa.  She applied for asylum in May 2009.  In June 2009, the Department of Homeland Security issued a Notice to Appear, which charged Lomtyeva with removal for having overstayed her visa.  In 2012, the IJ denied Lomtyeva's asylum, withholding, and CAT applications.  The IJ found Lomtyeva's testimony credible, but concluded Lomtyeva had experienced only discrimination, not persecution.  The IJ also found that even if Lomtyeva had been persecuted, her return trips to Ukraine undermined a well-founded fear of future persecution.

The BIA adopted the IJ's decision in full, meaning we directly review the IJ's decision.  *Tamang v. Holder*, 598 F.3d 1083, 1088 (9th Cir. 2010).  The IJ's findings of fact are reviewed for substantial evidence.  *Id.*  A decision is unsupported by substantial evidence if a reasonable factfinder would be compelled to reach the opposite decision.  *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

To be eligible for asylum, an applicant must be unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution" on account of a protected ground.  8 U.S.C. § 1101(a)(42)(A).  Religion is a protected ground.  *Id.*  Persecution must be committed by either the government or

2

"forces the government is either unable or unwilling to control." *Navas v. INS*, 217 F.3d 646, 655–56 (9th Cir. 2000) (citation omitted). Past persecution establishes a presumption of a well-founded fear of future persecution. *Hanna v. Keisler*, 506 F.3d 933, 937 (9th Cir. 2007).

The IJ's determination that Lomtyeva did not establish past persecution on account of her membership in the Seventh Day Adventist ("SDA") church is unsupported by substantial evidence. For example, Lomtyeva testified that a mob threw rocks through the windows of the house where Lomtyeva and other SDA members were worshiping. The house was set on fire as the police arrived, but the police did not intervene, told the SDA congregants not to call for help, and said, "We have one united Orthodox Christian church. . . . If you don't want to go to that church, don't bother us." Another time, a group insulted Lomtyeva and another SDA member while they were walking together. The two called the police, who said, "[I]f your neighbors don't kill you, we will come and kill you." This was a "specific and menacing death threat" from a police official and "is strong evidence of persecution." *Mashiri v. Ashcroft*, 383 F.3d 1112, 1120 (9th Cir. 2004).

Over several years, Lomtyeva was also refused medical treatment, fired, cursed at, attacked, spat upon, and pushed down stairs on account of her religion.

3

On at least two of those occasions the police again failed to intervene or did not investigate Lomtyeva's complaint.

The severe and regular attacks Lomtyeva faced constitute persecution, not mere discrimination. *See Wakkary v. Holder*, 558 F.3d 1049, 1059 (9th Cir. 2009); *see also Krotova v. Gonzales*, 416 F.3d 1080, 1087 (9th Cir. 2005). Here, the police expressly condoned acts of persecution and themselves threatened Lomtyeva with physical harm. Any reasonable factfinder would find that Lomtyeva was persecuted.

Nor do Lomtyeva's return trips to Ukraine after visiting her daughter in the United Kingdom rebut the presumption of a well-founded fear. Lomtyeva testified that she returned each time to avoid jeopardizing her daughter's immigration status in the United Kingdom. This is not inconsistent with well-founded fear. *See Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1091 (9th Cir. 2005) (stating that this court has "never held that the existence of return trips standing alone can rebut this presumption" of a well-founded fear); *see also Karouni v. Gonzales*, 399 F.3d 1163, 1176 (9th Cir. 2005).

The IJ denied Lomtyeva's withholding of removal claim *a fortiori* after finding her ineligible for asylum. We remand for the BIA to also consider

Lomtyeva's withholding application in light of our holding that she is eligible for asylum.

The IJ properly denied Lomtyeva's petition on her CAT claim. Substantial evidence supports the finding that she was not previously tortured and that she would not be tortured if she returned to Ukraine. *See Cole v. Holder*, 659 F.3d 762, 770–71 (9th Cir. 2011).

The petition for review is granted with respect to petitioner's asylum and withholding of removal claims, but denied with respect to her CAT claim, and the matter is remanded to the BIA for further proceedings consistent with this disposition.

**GRANTED in part, DENIED in part, and REMANDED.**

*Lomtyeva v. Sessions*, No. 14-70424

WALLACE, Circuit Judge, dissenting in part:

The Immigration and Nationality Act does not define "persecution." Instead, the federal judiciary over time has developed legal standards to police the line between discrimination and harassment on the one hand, and persecution on the other. The line can be an amorphous one. But it is this lack of definitional clarity that makes our vigilance in policing the line all the more imperative. Because I fear the majority in this case has lowered the threshold for demonstrating persecution, I respectfully dissent.

I.

We have emphasized that persecution is "an extreme concept that does not include every sort of treatment our society regards as offensive." *Wakkary v. Holder*, 558 F.3d 1049, 1059 (9th Cir. 2009) (citation omitted). "Discrimination on the basis of race or religion, as morally reprehensible as it may be, does not ordinarily amount to 'persecution' within the meaning of the Act." *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995). Where a single incident does not rise to the level of persecution, we assess whether the cumulative effect of all the mistreatment suffered by the petitioner compels a finding of persecution. *See Krotova v. Gonzales*, 416 F.3d 1080, 1084–85 (9th Cir. 2005) (citation omitted). To reverse an IJ's finding regarding persecution we must find that the evidence not

only supports the contrary conclusion, but compels it. *Nahrvani v. Gonzales*, 399 F.3d 1148, 1151 (9th Cir. 2005) (citation omitted).

Here, the majority concludes the record compels a finding of past persecution based upon the cumulative effect of the following: (1) "severe and regular attacks" endured by Lomtyeva, (2) police acquiescence in the face of some of these incidents, and (3) an episode in which a police officer uttered a threat to kill Lomtyeva and her fellow congregants. There is no disputing the deplorable nature of the mistreatment suffered by Lomtyeva. The record, however, does not compel the conclusion that Lomtyeva suffered persecution.

### A.

The majority characterizes the harassment and mistreatment suffered by Lomtyeva at the hands of private citizens as "severe and regular attacks." I disagree with that characterization. Over several years, Lomtyeva was occasionally cursed at, spat upon, pushed (including one incident where she and friend were pushed down stairs), and refused medical treatment. But Lomtyeva was not subject to regular and constant physical attacks, as suggested by the majority. Nor did the level of violence she experienced rise to the level present in *Krotova*, the case upon which the majority seems to rely principally. In *Krotova*, the petitioner on two occasions was surrounded by groups of people who not only yelled slurs and

2

threats at her, but also pushed, kicked, and punched her. *Krotova*, 416 F.3d at 1085–86. These attacks, in essence, were group assaults against an individual. Here, by contrast, the physical confrontations largely were not perpetrated by groups against Lomtyeva individually, and did not involve punching or kicking. Although cursing at, spitting upon, and shoving an individual on account of her religious beliefs is morally objectionable, I do not think the incidents here rise to the level of "severe and regular attacks" that would compel a finding of persecution.

### B.

The police response to the mistreatment suffered by Lomtyeva is no doubt lamentable. In the most serious incident, neighbors set fire to an SDA gathering place and the police responded by blaming the SDA congregants and telling them "not to bother [the police]" if they were not willing to attend the Orthodox Christian church. In another serious incident, the police responded to Lomtyeva's complaints that she and fellow congregants were being verbally abused by telling them, "[I]f your neighbors don't kill you, we will come and kill you." These episodes indicate the police acquiesced in, and actively engaged in, discrimination and harassment against Lomtyeva and her fellow congregants. But these incidents,

considered either alone or in combination with the other mistreatment suffered by Lomtyeva, do not compel a finding of persecution.

First, although the fire incident is undoubtedly serious, it also was a single incident in which no person was killed or injured. The police may have been unresponsive, but they did not detain, arrest, or assault anyone. Lomtyeva and her fellow congregants continued to hold worship services elsewhere, and continued their proselytizing activities throughout the area. I raise these points not to suggest that persecution requires death, detention, or a complete inability to practice one's religion. But where the police fail to respond adequately to an incident that neither involves injury, nor results in a serious restriction on religious practice, such failure does not constitute acquiescence in persecution. *Compare Nagoulko v. INS*, 333 F.3d 1012, 1014, 1016 (9th Cir. 2003) (concluding that the record did not compel of finding of past persecution where petitioner at times faced harassment and disruptions by the police during church services, but "was not prevented from practicing her religion") *with Krotova v. Gonzales*, 416 F.3d 1080, 1084–85 (9th Cir. 2005) (concluding that the record compelled a finding of past persecution where police failed to respond to attacks of increasing frequency and severity that ultimately left petitioner and her small congregation "too frightened to continue to gather").

4

Second, while "death threats alone can constitute persecution," *Canales-Vargas v. Gonzales*, 441 F.3d 739, 734–44 (9th Cir. 2006), the context in which the threat is made ultimately determines its persecutory impact. *Nahrvani*, 399 F.3d at 1153–54. Here, a police officer verbally threatened Lomtyeva and her fellow congregants after Lomtyeva complained that she and her group were being verbally abused. However, the police never detained, arrested, or physically harmed Lomtyeva or any member of her group. That is, the threat was not accompanied by, nor connected to, any act of violence or significant harm. Under these circumstances, the officer's death threat does not add much to the record. *Id.* at 1153 (holding that the record did not compel a finding of persecution where the death threats received by petitioner "were anonymous, vague, and did not create a sense of immediate physical violence"). The threat was neither specific and menacing enough to be persecutory in and of itself, nor accompanied by violent confrontations with the police such that it could serve as compelling evidence of past persecution. *See, e.g.*, *Mashiri v. Ashcroft*, 383 F.3d 1112, 1119–20 (9th Cir. 2004) (concluding that a death threat was compelling evidence of past persecution where it was "specific and menacing" and was accompanied by acts of violent vandalism and a near-confrontation with a threatening mob). In my view, the majority ascribes too much weight to what appears to be more loose talk than

5

credible intent.

## C.

In sum, I do not believe the cumulative effect of the mistreatment suffered by Lomtyeva compels a finding of past persecution. Although Lomtyeva was discriminated against, harassed, and mistreated because of her SDA religious beliefs, she never suffered significant physical violence, she was never attacked, beaten, detained, or arrested by the police, and she continued to worship regularly with her SDA congregants and proselytize throughout the area. On this record, the IJ was not compelled to find past persecution. *Nagoulko*, 333 F.3d at 1017–18 (concluding the record did not compel a finding of persecution where petitioner was harassed, discriminated against, pushed on a couple of occasions, and threatened with death, but was never beaten, detained, or prevented from practicing her religion).

## II.

My colleagues also conclude that Lomtyeva's return trips to Ukraine after visiting her daughter in the United Kingdom do not rebut the presumption of a well-founded fear of persecution. As the discussion above makes clear, I disagree with the majority's premise. In my view, the record does not compel a finding of past persecution and so there would be no presumption of a well-founded fear to

6

rebut. The burden is Lomtyeva's. Thus, even assuming the return trips could not rebut a presumption of a well-founded fear, the trips are certainly relevant in assessing whether Lomtyeva carried her burden to prove a well-founded fear absent the presumption. *Loho v. Mukasey*, 531 F.3d 1016, 1017–18 (9th Cir. 2008) ("It is well established in this court that an alien's history of willingly returning to his or her home country militates against a finding of past persecution or a well-founded fear of future persecution."). In this regard, the IJ properly weighed Lomtyeva's stated return trips to Ukraine against her stated desire to avoid jeopardizing her daughter's immigration status in the United Kingdom. Given that the return trips occurred during the period of the alleged persecutory acts, the IJ had substantial evidence to conclude that the trips undermined her claim of a well-founded fear. The record does not compel a contrary conclusion.

III.

This is a close case. I certainly sympathize with Lomtyeva and condemn the mistreatment she suffered. But our capacity for sympathy does not dictate the legal inquiry. Instead, we must consider whether the extremity of the mistreatment suffered by the petitioner, viewed in the aggregate, compels a finding of persecution. This is a high bar that I would hold was not met in this case. Although the IJ may have been justified in finding that Lomtyeva suffered persecution, the

7

record does not compel that conclusion. Therefore, the petition for review should

be denied. I respectfully dissent.