**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BILAL HUSSAIN,

*Petitioner*,

v.

JEFFREY A. ROSEN, Acting Attorney
General,

*Respondent.*

No. 18-70780

Agency No.
A209-171-424

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 12, 2020
Pasadena, California

Filed January 11, 2021

Before:  Consuelo M. Callahan, Patrick J. Bumatay, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge VanDyke

# SUMMARY[*]

## Immigration

Denying Pakistani national Bilal Hussain's petition for review of a decision of the Board of Immigration Appeals, the panel held that substantial evidence supported the denial of asylum, withholding of removal, and protection under the Convention Against Torture, and that the immigration judge did not deprive Hussain of due process.

The panel held that the IJ provided Hussain, who was pro se, due process by providing details about the structure of the hearing and the availability of counsel, and asking numerous questions through which Hussain had ample opportunity to develop his testimony. The panel rejected Hussain's assertion that the IJ repeatedly misled him about what he needed to show to meet his burdens by asking open-ended questions and failing to adequately probe the record. Rather, the panel explained that the IJ developed the record in its role as an independent fact-finder, and it was Hussain's responses that determined the scope of the testimony elicited. The panel also rejected Hussain's reliance on *Jacinto v. INS*, 208 F.3d 725 (9th Cir. 2000), for the proposition that IJs must go beyond their impartial role and instead essentially act as advocates for pro se asylum applicants. The panel explained that it could not read *Jacinto*'s imprecise "fully-develop-the-record-for-pro-se-petitioners" dicta as expansively as Hussain seeks without doing serious harm to the adversarial process established by

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Congress for petitioners like Hussain. The panel also concluded that, even if Hussain could demonstrate error, he did not show prejudice, where he failed to point to any additional evidence concerning past persecution or the other grounds upon which the Board denied relief.

The panel held that the evidence did not compel the finding of past persecution, where Hussain did not testify to any individualized physical attacks or threats, and he failed to show sufficient economic or psychological harm.

The panel also held that Hussain failed to establish that the Pakistani government was unable to control the Taliban, noting that Hussain failed to report his two attacks to authorities, and that record evidence demonstrated that the government's significant efforts to combat terrorism and sectarian violence had resulted in a substantial reduction in terror-related fatalities. Although Hussain argued that he did not report the attacks because police provide no protection, the panel noted that even if the government's response to Hussain's two attacks was lacking, the standard is not that the government can prevent *all* risk of harm.

The panel held that Hussain failed to establish that he could not reasonably relocate within Pakistan to avoid future persecution. The panel rejected Hussain's arguments that it would be unreasonable for him to relocate to an unfamiliar town without family, or because he would need to live in a rented space or with a host family. The panel also noted that Hussain failed to show there were restrictions on movement in areas outside the areas of high unrest that Hussain would assumedly seek to avoid. The panel also explained Hussain could not successfully argue that relocation was unreasonable because the country at large is subject to

generalized violence, because he did not show he is at risk of country-wide targeted persecution.

The panel also held that substantial evidence supported the denial of CAT protection because Hussain failed to establish that he faces a particularized risk of torture, and never alleged, in the record or in his testimony, that he ever suffered any harm—"severe pain or suffering"—that rose to the level of torture.

## COUNSEL

Salmah Y. Rizvi (argued) and Douglas H. Hallward-Driemeier, Ropes & Gray LLP, Washington, D.C., for Petitioner.

Kristen A. Giuffreda (argued), Trial Attorney; Shelley R. Goad, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

VANDYKE, Circuit Judge:

Pakistani national Bilal Hussain (Hussain) attempted to enter the United States near Otay Mesa, California without valid documentation, stating he feared persecution from the Taliban in his native Pakistan. The Department of Homeland Security initiated removal proceedings, and Hussain petitioned for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

At his removal hearing, Hussain testified before the Immigration Judge (IJ) that the Taliban burned down his jewelry store in an attack on his hometown in 2007, but never hurt or personally threatened him or his family during that attack or at any other time, including up to when Hussain left Pakistan in September 2015. Hussain also submitted documents describing a subsequent 2012 Taliban attack on a convoy of cars that he was traveling with. The attack did not injure Hussain, but in fleeing he lost the business inventory in his car. The IJ asked Hussain open-ended questions about his experiences with the Taliban and never received any information suggesting Hussain was specifically targeted, and ultimately determined that Hussain failed to meet his burden of proof for asylum, withholding of removal, or CAT.

The Board of Immigration Appeals (BIA) affirmed, noting that Hussain never testified or submitted evidence claiming any actual injury caused by the Taliban, or that the Taliban individually targeted or attacked him for any reason. The BIA also concluded that the IJ provided Hussain due process because there was no indication in the transcript or the appeal that Hussain did not understand the proceedings or that there were facts he was "unable to present."

Hussain seeks review of the BIA's decision, and we have jurisdiction under 8 U.S.C. § 1252. We dismiss Hussain's due process claims and deny review of his petition because the IJ provided Hussain with a full opportunity to present testimony, and the record does not compel the conclusion that the agency erred in determining that Hussain's description of generalized violence did not meet his burden of proof to show targeted persecution or torture.

## I.  BACKGROUND

At the start of Hussain's first hearing before the Immigration Court, the IJ explained his statutory rights as a petitioner, detailed the court's procedures, told him he had the right to an attorney, and continued the hearing to allow Hussain to find an attorney.  The IJ also described the role of the facility's "legal orientation provider (LOP)," and placed Hussain on the LOP list.  Hussain chose to receive LOP assistance instead of retaining counsel.

During Hussain's hearing, the IJ asked "why [he was] afraid to return to Pakistan."  When asked to describe his first Taliban encounter, Hussain described an incident in 2007 where "the Talibans [sic] were passing through our town, and we did not give them the way," causing the Taliban "to fire on the people and in the market."  Neither Hussain nor his family were injured or targeted in the attack.[1]  He testified his jewelry shop was among others that the Taliban burned, and that the Taliban later killed people and blocked the roads.  Hussain testified that no police or military responded to this particular attack, but described that the end of the encounter occurred when people from his village "attacked back."  Hussain's hometown is located within the FATA region, where "[i]n lieu of police, . . . [t]ribal leaders convene . . . tribal militias . . . not . . . formal law enforcement entities."  Hussain remained in his hometown of Parachinar until 2015, and testified he had no further interaction with the Taliban there.

---

[1] Hussain initially testified he was fired at by the Taliban, but did not elaborate when later asked if he "had any other adverse incidents with the Taliban."

Hussain responded "no" when the IJ asked if he was "ever harmed," if "anybody threaten[ed]" him, or if at "any time at all . . . anybody harmed or threatened [him] in Pakistan." Hussain also denied any problems with the police or any threats to his wife, children, mother, brothers, or sisters.[2]

The IJ considered this evidence and concluded Hussain "was not a victim of past persecution." The IJ ultimately found Hussain credible, but not "100 percent accurate as to country conditions in Pakistan." The IJ acknowledged that the 2015 and 2016 country reports for Pakistan described "a culture of lawlessness" in Hussain's region, but also showed "that the government is making great efforts to try to control the violence that is committed by . . . the Taliban." The IJ thus found Hussain "has not established a well-founded fear of future persecution on account of a protected ground," nor does he "have a nexus to a protected ground *if he fears general violence* in his home country." (emphasis added). The IJ denied Hussain's applications because he was never "harmed in the past, let alone tortured," and "could live in other locations in Pakistan without fearing or suffering any harm at the hands [of] the Taliban." And given that "the government has taken great strides to crack down on the Taliban," Pakistan was not "unable or unwilling to control the Taliban."

The BIA affirmed, noting that there was no indication in the transcript or the appeal that Hussain did not understand the proceedings or was "unable to present" any facts. The

---

[2] Hussain testified that "[o]nce, in Peshawar, a couple of boys had followed me," but Hussain went into a hotel and the boys did not harm him. He also testified that his father was threatened once in 2015 "by the Sunnis from [his] village," but that his father was never harmed.

BIA agreed with the IJ that Hussain "was never physically harmed or personally threatened in Pakistan" and concluded that the IJ did not err in failing to probe a 2012 convoy attack described only in Hussain's written application because Hussain did not allege the attack targeted or injured him specifically.**[3]** The BIA determined that "any future harm

---

**[3]** Hussain's application included two letters from the Anjuman-e-Hussania, a committee in Hussain's hometown. The first detailed how after the 2007 incident Hussain did not immediately re-establish his jewelry store, but because he was a "Tailor Master" he continued his other tailoring job despite the "huge financial los[s]." The letter described a second Taliban attack in 2012 on a convoy of vehicles, one of which Hussain was riding in. Hussain's vehicle was "in the last row" and drove away to escape the attack, but in doing so "fell down in the pitch and all the jewellers [sic] [were] lost." Hussain was not injured.

The parties dispute whether a second letter from the Anjuman-e-Hussania describing Hussain's community activities in Parachinar was included in the record. We assume without deciding that it was, but it does not affect the analysis. According to the second letter, as an "active member of Passdaran," Hussain "helped the homeless peoples and taken injuries [sic] to the hospital for treatment during crises in the area. *Due to which Taliban terrorists threatened him and his family members to kill or kidnap*." (emphasis added). The IJ asked multiple questions that would have allowed Hussain to elaborate on the Taliban's "threat[]" nonspecifically referenced by this one sentence in the second letter. Hussain provided no additional detail. "Our court generally treats unfulfilled threats, without more, as within that category of conduct indicative of a danger of future persecution, rather than as past persecution itself." *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000). Moreover, "vague and conclusory allegations . . . are clearly insufficient" to support a petitioner's claim of persecution; "[o]ur case law has consistently required more." *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006); *see also id.* at 1170 ("We cannot conclude that the unspecified threats against Mendez-Gutierrez were sufficiently menacing to constitute past persecution, as we do not even know what the threats entailed." (citation omitted)). In contrast to this one anomalous, bare assertion in the letter, Hussain's testimony—which we take as true (as the IJ did)—provides substantial evidence that neither

[Hussain] may suffer in Pakistan would not constitute 'persecution' under the Act because" of the Pakistani government's "significant efforts to combat terrorist organizations." And the fact that "terrorist attacks continue in Pakistan . . . is insufficient" on its own to conclude the government was unable to control the Taliban. Although Hussain testified that the police did not intervene after the 2007 attack on his village, the BIA concluded the single incident did not in itself demonstrate the government's inability or unwillingness "to protect him from the Taliban." The BIA therefore found no clear error in the IJ's conclusion that Hussain failed to meet his burden of proof for asylum, withholding of removal, or CAT protection.

## II. STANDARD OF REVIEW

We review the BIA's factual findings underlying its determination that a petitioner failed to establish eligibility for asylum, withholding of removal, and protection under CAT for substantial evidence. *Hanna v. Keisler*, 506 F.3d 933, 937, 940 (9th Cir. 2007) (asylum and withholding of removal); *Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003) (CAT). We reverse the BIA only where "any reasonable adjudicator would be compelled to conclude to the contrary." *Ali v. Holder*, 637 F.3d 1025, 1029 (9th Cir. 2011) (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Go v. Holder*, 640 F.3d 1047, 1054 (9th Cir. 2011) (citation omitted). Accordingly, review of the Board's eligibility determinations in this regard is

---

he nor his family were ever the specific targets of the Taliban's generalized violence.

"extremely deferential." *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995).

## III.    DUE PROCESS

As an initial matter, Hussain claims the IJ did not sufficiently explain the proceedings and did not ask him adequately probing questions, resulting in a denial of due process.**[4]** A petitioner facing removal "is entitled to a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf." *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). We "will reverse the BIA's decision on due process grounds if the proceeding was 'so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Id.* (citation omitted). To prevail on such a claim, a petitioner must also demonstrate "substantial prejudice." *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000).

### A. The Fairness of the Proceedings

#### 1. The IJ Explained the Legal Procedures.

"[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). But because "an alien in civil removal proceedings is not entitled to the same bundle of constitutional rights afforded defendants in criminal

---

**[4]** Hussain also argues that the IJ did not provide due process because the IJ declined to enter certain photographs and a memory card into the record during his hearing. As this claim was not raised before the BIA, we cannot address it here. *Brezilien v. Holder*, 569 F.3d 403, 412 (9th Cir. 2009) ("Because Brezilien failed to exhaust his administrative remedies as to this alleged procedural error, we lack jurisdiction to review it.").

proceedings . . . 'various protections that apply in the context of a criminal trial do not apply in a deportation hearing.'" *Valencia v. Mukasey*, 548 F.3d 1261, 1263 (9th Cir. 2008) (quoting *Ramirez-Osorio v. INS*, 745 F.2d 937, 944 (5th Cir. 1984)). As an adversarial process, immigration proceedings are impartial proceedings where petitioners may make their case, but are not entitled to the IJ's legal assistance in doing so. Crucially, a pro se "alien has no blanket right to be advised of the possibility of asylum" in a hearing before an Immigration Judge. *Valencia*, 548 F.3d at 1263. As required by statute, an IJ must ensure "the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B). In considering whether Hussain received due process, "[t]he critical question is '[w]hether the IJ's actions prevented the introduction of significant testimony.'" *Oshodi v. Holder*, 729 F.3d 883, 890 (9th Cir. 2013) (citation omitted).

Here, the IJ ensured that Hussain understood and had the opportunity to access all manner of procedural assistance to "introduc[e] [] significant testimony." *Id.* The IJ explained Hussain's statutory rights, detailed the court procedures, and ensured Hussain had the opportunity to procure a lawyer if he wanted one. Instead, Hussain ultimately chose to receive LOP assistance in preparing his asylum application.

## 2. The IJ Developed the Record.

During the hearing, the IJ asked Hussain multiple broad questions to elicit testimony explaining why Hussain was "afraid to return to Pakistan." Hussain faults the IJ's open-ended questions, arguing that the IJ needed to explicitly detail the elements of a claim for asylum and failed to "adequately probe the record" for nuggets that might lend

support to Hussain's claims.  Consequently, Hussain argues that he was "repeatedly misled" by the IJ as to what he needed to show to meet his burdens.

The IJ developed the record in its role as an independent fact-finder, and it was Hussain's responses that determined the scope of the testimony elicited.  By starting the questioning at a general level, the IJ let Hussain control the testimony presented, while being prepared to drill down based on whatever Hussain provided, rather than curtailing or improperly influencing the testimony ex ante.  This was not a violation of due process.  *See Agyeman v. INS*, 296 F.3d 871, 884 (9th Cir. 2002) ("The IJ must be *responsive* to the particular circumstances of the case . . . ." (emphasis added)).  Notwithstanding the adversarial character of the proceedings, the IJ repeatedly sought clarification of Hussain's answers and gave him multiple opportunities to expand his testimony.  Hussain framed the landscape of his testimony in this case through his answers to these questions.

Hussain's argument that he was nonetheless misled demands too much of the IJ, and if accepted would fundamentally alter the well-recognized adversarial nature of immigration proceedings.  The IJ was not required to ask Hussain leading questions and feed him the types of scenarios sufficient to achieve asylum.  That could change the IJ's role from that of an impartial adjudicator to effectively being an advocate for the petitioner—a role that our court has repeatedly rejected.  5 C.F.R. § 2635.101(b)(8) (delineating that IJs have a neutral role and "shall act impartially and not give preferential treatment to any . . . individual"); *C.J.L.G. v. Barr*, 923 F.3d 622, 636 (9th Cir. 2019) (Paez, J., concurring) (emphasizing that, despite the IJ's duty to enable the petitioner to present testimony, "the IJ cannot be a[n] . . . advocate"); *United States v. Moriel-*

*Luna*, 585 F.3d 1191, 1197–98 (9th Cir. 2009) ("We do not require IJs to speculate about the possibility of anticipated changes of circumstances and advise aliens of facts not suggested in the record," nor does "our precedent . . . require that an IJ act creatively to advise an immigrant of ways in which his legal prospects at forestalling deportation might improve with fundamental changes in his status."); *Bui v. INS*, 76 F.3d 268, 271 (9th Cir. 1996) ("The regulations do not require the IJ to scour the entire record or to interrogate an alien regarding all possible avenues of relief . . . .").

Despite the IJ's broad queries in this case, Hussain argues that Ninth Circuit precedent demands that IJs go beyond their impartial role and instead essentially act as advocates for pro se asylum applicants. That is wrong. Hussain emphasizes *Jacinto v. INS*, 208 F.3d 725, 732–33 (9th Cir. 2000), where he claims this court "remanded where the IJ did not ask the applicant questions about her persecutor's motive." But Hussain miscomprehends the holding and import of *Jacinto*, relying on hypothetical questions from that case that this court in dicta said the IJ *might have* asked. *Id.* at 732. The actual reason this court in *Jacinto* found a violation of due process was because the IJ there "did not clearly explain either that *she had the right to testify* even if she was represented by a lawyer . . . and *perhaps most important*, the [IJ] *never gave her the opportunity to present her own additional narrated statement*." *Jacinto*, 208 F.3d at 734 (emphases added). *That* was the due process violation in *Jacinto*. Here, in contrast, the IJ gave Hussain multiple opportunities to expound upon the documents he provided and explicit instructions and options regarding counsel.

Hussain's attempt to leverage the panel's dicta in *Jacinto* into a far more sweeping requirement for IJs doesn't work,

in large part because our court's remand in *Jacinto* represents the high-water mark of what due process can require in Immigration Court hearings—at least as long as they remain adversarial hearings. In contrast to the specific reason it gave for remanding in *Jacinto*, the majority in that case—relying on a handbook from the United Nations, a Ninth Circuit *dissent*, and the very different, *non-adversarial* fora of Social Security hearings—also attempted to transplant the statement, oft-repeated by Hussain, that a *Social Security* ALJ "must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Jacinto*, 208 F.3d at 733 (citation omitted). Pointing to language describing the ALJ's role in that statutorily distinct, non-adversarial context, the *Jacinto* majority—in language as sweeping as it is ambiguous— stated that, like Social Security ALJs, IJs are similarly "obligated to *fully develop the record* in those circumstances where applicants appear without counsel." *Jacinto*, 208 F.3d at 734 (emphasis added). Overreading this inherently indeterminate standard, as Hussain asks us to do, would supplant the adversarial process required by Congress in *these* proceedings with a non-adversarial process improperly borrowed from the very different Social Security context.

However we may properly interpret *Jacinto*'s imprecise "fully-develop-the-record-for-pro-se-petitioners" dicta, we cannot read it as expansively as Hussain seeks without doing serious harm to the adversarial process established by Congress for petitioners like Hussain. The core of the due process right afforded petitioners in immigration proceedings is the *opportunity* to testify. IJs need not— indeed, cannot—essentially act as Sherpas for pro se petitioners, guiding them in making their case. Extending *Jacinto* as Hussain urges would put that case in unnecessary conflict with our court's other, later, precedent, which holds

that due process has been provided whenever "an alien [is] given a full and fair opportunity to be represented by counsel, to prepare an application for [immigration] relief, and to present testimony and other evidence in support of the application." *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926–27 (9th Cir. 2007); *see also Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1056 (9th Cir. 2005) ("We will grant a petition for review from a BIA decision on due process grounds if the proceeding was so fundamentally unfair that the alien was *prevented* from reasonably presenting [his or her] case.") (emphasis added) (citation omitted).[5]

Here, the IJ provided Hussain due process by providing details about the structure of the hearing, the availability of counsel, and asking numerous questions through which Hussain had ample opportunity to develop his testimony. *See Ramirez v. Sessions*, 902 F.3d 764, 772 (8th Cir. 2018) (finding the IJ provided due process by asking "relevant fact questions" and then "three open-ended questions allowing [the petitioner] an opportunity to elaborate").

## B. Prejudice

"To prevail on a due process challenge to deportation proceedings, [the petitioner] must show [both] error and

---

[5] The other cases Hussain cites where we have found due process violations have no resemblance to this case. *See, e.g.*, *Pangilinan v. Holder*, 568 F.3d 708, 709–10 (9th Cir. 2009) (finding due process violated where the IJ delegated all questioning of the pro se petitioner to the government's attorney); *Agyeman*, 296 F.3d at 877 (finding due process violated where the IJ required testimony from an inaccessible witness for the petitioner to present his application); *Colmenar*, 210 F.3d at 971–72 (finding due process violated where the IJ affirmatively prevented petitioner's testimony).

substantial prejudice." *Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020) (citation omitted).  Even if Hussain could demonstrate error (he hasn't), he cannot show prejudice.[6]   Although Hussain claims he would have provided many more details about his political and religious background if asked, he doesn't point to any additional evidence of persecution or the grounds upon which the BIA denied him asylum. *See, infra*, §§ IV.B, IV.C.  And some of the testimony Hussain now claims he would have proffered is belied by the actual testimony he gave.

To reiterate: the IJ asked broad questions to give Hussain the opportunity to testify to whatever he wished.  Hussain's allegations that he would have provided different answers to more pointed questions are unpersuasive and do not establish prejudice.  Hussain claims he would have told the IJ about direct threats the Taliban made to him before burning down his shop in 2007.  But when the IJ broadly asked "[what happened] the first time you had a problem with the Taliban?," Hussain only said the "Talibans [sic] were passing through our town, and we did not give them the way."  Hussain claims he would have testified about Taliban threats against himself specifically from 2007 to 2015 for his anti-Taliban politics, but to the IJ he denied receiving any threats because "[t]hey don't threaten you . . . they just kills [sic] you."  Hussain says he would have described injuries from the 2012 convoy attack, but when asked "were there any times—was there any time at all that anybody harmed or

---

[6] Hussain argues prejudice is presumed by relying on two cases, one where the petitioner was prevented from testifying altogether and another where the petitioner received an incomprehensible translation during proceedings. *See Colmenar*, 210 F.3d at 971–72; *Perez-Lastor v. INS*, 208 F.3d 773, 778–80 (9th Cir. 2000).  While Hussain may overread those cases to say we presumed prejudice, neither is like this case.

threatened you in Pakistan?" Hussain answered, "No. I was not beaten up or anything like that, no." Hussain cannot now claim he was prejudiced when the IJ's exact questions could have elicited the very responses Hussain claims he was unable to provide.

## IV.  ASYLUM & WITHHOLDING OF REMOVAL

To meet the burden for asylum because of past persecution, the petitioner "has the burden of establishing that (1) his treatment rises to the level of persecution; (2) the persecution was on account of one or more protected grounds; and (3) the persecution was committed by the government, or by forces that the government was unable or unwilling to control." *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010). A petitioner who cannot show past persecution might nevertheless be eligible for relief if he instead shows a "well-founded fear of future persecution" along with the other elements. *See id.*; *Wakkary v. Holder*, 558 F.3d 1049, 1060 (9th Cir. 2009). Even if the standard is met, an applicant is still ineligible for asylum if it would be reasonable under the circumstances to relocate within the country to avoid future persecution. *Kaiser v. Ashcroft*, 390 F.3d 653, 659 (9th Cir. 2004). Because the asylum standard is more lenient than withholding of removal's "clear probability" standard, failing to establish eligibility for asylum forecloses eligibility for withholding of removal. *Alvarez-Santos v. INS*, 332 F.3d 1245, 1255 (9th Cir. 2003).

### A.  Hussain Did Not Demonstrate Past Persecution.

Hussain testified to incidents of generalized violence that do not rise to the level of persecution. Hussain argues the physical attacks, death threats, economic harm, and psychological harm he suffered "both independently and cumulatively rose to the level of persecution." The BIA

disagreed, and the record in this case does not compel the conclusion that the BIA erred.

### 1. The physical attacks were not past persecution.

To establish past persecution, an applicant must show he was individually targeted on account of a protected ground rather than simply the victim of generalized violence. *Ndom v. Ashcroft*, 384 F.3d 743, 753 (9th Cir. 2004) ("Where we have found no persecution despite civil strife or random violence, the reason has been the applicant's failure to establish that his or her persecutor was motivated by one of the five statutory grounds."), *superseded by statute on other grounds as recognized in Parussimova v. Mukasey*, 555 F.3d 734, 739 (9th Cir. 2009); *see also Rostomian v. INS*, 210 F.3d 1088, 1089 (9th Cir. 2000) (determining petitioners did not show past persecution where they "did not establish that the [knife] attack was anything more than an act of random violence during a period of significant strife"); *Prasad v. INS*, 101 F.3d 614, 617 (9th Cir. 1996) (explaining that in order to demonstrate past persecution "[i]t is not sufficient to show [petitioner] was merely subject to the general dangers attending a civil war or domestic unrest").

Hussain based his past persecution claim on two events: in 2007 the Taliban burned his jewelry shop along with other shops in his hometown, and in 2012 the Taliban attacked a convoy of cars that included Hussain. Because "[a]sylum generally is not available to victims of civil strife, unless they are singled out on account of a protected ground," Hussain needed to show he was "singled out" in his region of Pakistan that is often subject to Taliban incursions. *Ochave v. INS*, 254 F.3d 859, 865 (9th Cir. 2001). But Hussain testified the burning of his shop was the result of a general attack on the town that resulted in other shops being

burned as well. And though others died in the attack, Hussain did not testify to any individualized physical attacks or threats. Likewise, Hussain provided no testimony that he was a specific target of the Taliban's attack on his convoy rather than a general victim of a random raid. *Cf. Gormley v. Ashcroft*, 364 F.3d 1172, 1177 (9th Cir. 2004) (explaining that such attacks "do not rise to the level of [past] persecution; robberies of this sort are an all too common byproduct of civil unrest and economic turmoil"). Substantial evidence supports the BIA's conclusion that this is not persecution. *See Ochave*, 254 F.3d at 865.

### 2. The other harms alleged do not qualify as persecution.

Hussain also argues he was subjected to death threats, economic harm, and psychological harm.[7] Hussain during his testimony denied either he, his wife, or children were ever threatened by the Taliban. Unfulfilled threats are very rarely sufficient to rise to the level of persecution, and Hussain has not made that showing here. *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003) (holding that the unfulfilled threats in that case constituted "harassment rather than persecution"). While his father was once threatened by a group of Sunni Muslims (not the Taliban), no harm ever came to his father, mother, or siblings. Hussain's testimony

---

[7] Hussain fainted during his bond hearing, which he argues was a result of the psychological harm he experienced in Pakistan. While psychological harm may constitute persecution, *see Mashiri v. Ashcroft*, 383 F.3d 1112, 1120 (9th Cir. 2004), there is no evidence in the record, other than Hussain's attorney's assertions, that his fainting during his hearing was due to past psychological harm rather than for some other reason.

and documentation do not support his assertion on appeal that he received death threats.

"We have defined economic persecution as 'substantial economic disadvantage' that interferes with the applicant's livelihood . . . ." *He v. Holder*, 749 F.3d 792, 796 (9th Cir. 2014) (citation omitted). While the record reflects that Hussain's jewelry shop—along with other shops in the town—was burned in 2007 and he lost jewelry stock in the 2012 convoy attack, Hussain did not detail the actual impact of these losses and was afterward able to "continue[] his Tailoring job." "[M]ere economic disadvantage alone does not rise to the level of persecution." *Gormley*, 364 F.3d at 1178. Though Hussain undoubtedly experienced hardship from his shop burning, this harm also lacks the individual targeting necessary to show persecution because other shop owners in his village experienced the same losses. And while the burning of the store occurred in 2007 and the convoy attack in 2012, Hussain did not leave the country until 2015. As he was "able to continue working during that period . . . substantial evidence supports the BIA's determination that [the petitioner] did not suffer persecution" based on economic harm. *He*, 749 F.3d at 796.

### 3. Considered cumulatively, Hussain did not demonstrate past persecution.

Even considered cumulatively, *Mashiri*, 383 F.3d at 1120–21, Hussain's claims of generalized physical attacks, contradictory testimony of death threats, unspecified economic harm, and unsubstantiated psychological harm do not rise to the level of targeted persecution. Where a country is embroiled in "indiscriminate violence," citizens of that country are only eligible for asylum if they can demonstrate that "they are singled out on account of a protected ground." *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151 (9th Cir.

2010).    Hussain did not carry his burden to show past persecution and this court is not compelled to reverse the BIA's determination that the IJ correctly found "the violence created by the Taliban . . . basically targets everybody."

## B. The Pakistani Government Is Not Unwilling or Unable to Prevent Harm.

Hussain also failed to demonstrate the third prong of his persecution claim—that his persecution was "committed by the government, or by forces that the government was unable or unwilling to control." *Baghdasaryan*, 592 F.3d at 1023. Hussain does not dispute the Pakistani government's willingness to control the Taliban, but contends he was persecuted and will be again due to the government's inability to eradicate the Taliban.

Hussain argued that "the police do[] not provide any protection to the Shias, and the Pakistan government is also not helping or protecting Shias."  But Hussain never claimed that he reported the 2007 or 2012 attacks to law enforcement authorities or ever sought police assistance, which we balance in our analysis of the BIA's determination. *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1069 (9th Cir. 2017).  Hussain maintained he did not report the attacks because the police provide no protection.  But even if the government's response to these two particular events was lacking, the standard is not that the government can prevent *all* risk of harm.  This is effectively the standard pressed by Hussain.  Such a requirement could not even be met by the United States or the European Union, where terrorist attacks unfortunately harm innocents too frequently.  Instead, we have reasonably determined that a country's government is not "unable or unwilling" to control violent nonstate actors when it demonstrates efforts to subdue said groups. *See Mansour v. Ashcroft*, 390 F.3d 667, 673 (9th Cir. 2004)

(finding the Egyptian government was not unable or unwilling to control terrorists because "the relevant State Department Profile reflected the fact that Egyptian authorities have prosecuted those who have committed 'acts of terrorism' against Christians"); *Rahimzadeh*, 613 F.3d at 922–23 (finding the Danish government was not unable or unwilling to control extremists based on "active efforts to address and control violence by radical religious groups").

The BIA reviewed the country reports and recognized that "the Pakistani government has made significant efforts to combat terrorist organizations and sectarian violence," and the record reflected "multiple counterinsurgency and counterterrorism operations in [Hussain's home region] to eradicate militant safe havens." These operations produced a substantial reduction in terror-related fatalities in Pakistan from 11,704 in 2009 to 1,720 in 2016. Although the record also reflects that the Taliban continues to operate in regions of Pakistan, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Go*, 640 F.3d at 1054 (citation omitted). Considering the government's efforts we are not compelled to conclude that the Pakistani government is entirely unable to control the Taliban—even assuming the government did not prevent or effectively punish the two specific attacks Hussain experienced. *See Doe v. Holder*, 736 F.3d 871, 878 (9th Cir. 2013) ("[U]nwillingness or inability to control persecutors is not demonstrated simply because the police ultimately were unable to solve a crime or arrest the perpetrators . . . .").

**C. It Would Not Be Unreasonable for Hussain to Relocate Within Pakistan.**

Hussain contends that he would be at risk of future persecution if he were deported. Importantly, Hussain's claims of future persecution were focused on the risks that would arise if he returned to his hometown in Parachinar. But "[a]n applicant does not have a well-founded fear of [future] persecution if the applicant could avoid persecution by relocating to another part of the applicant's country," unless doing so would be unreasonable under the applicant's circumstances. 8 C.F.R. § 1208.13(b)(2)(ii); *see also Kaiser v. Ashcroft*, 390 F.3d 653, 659 (9th Cir. 2004).

Relocation is generally not unreasonable solely because the country at large is subject to generalized violence. 8 C.F.R. § 1208.13(b)(3). The BIA noted that the country reports suggest Taliban attacks are "more prevalent" in some parts of Pakistan than others. Thus "the applicant shall bear the burden of establishing that it would not be reasonable for [them] to relocate, unless the persecution is by a government or is government-sponsored." *Id.* § 1208.13(b)(3)(i). Because Hussain never claimed to fear the government or a government-sponsored group, that burden is properly placed on him to demonstrate why relocation is unreasonable. *Id.*

Hussain first argues it would be unreasonable for him to relocate within Pakistan because "his parents, wife, four children, and nine of his siblings all live in Parachinar . . . . It would be a hardship" to require him to relocate to "an unfamiliar town of Pakistan without his family." This is a strange argument. Surely relocating to an unfamiliar town in Pakistan—while no doubt some inconvenient distance from his family—would pose less of a hardship for his family than relocating *halfway across the globe* to the United States?

Hussain also argues that relocating would be difficult because he may have to live in a rented space or with a host family, and there are government restrictions and special permission needed to travel through certain areas. *See* 8 C.F.R. § 1208.13(b)(3). But anyone who moves out of their home and is unable to outright buy a new house would need to live with others or in a rented space. That relocation might be inconvenient or undesirable does not make it unreasonable. And the referenced travel restrictions and special permission requirements only apply to areas in the FATA region with high instances of unrest due to security concerns—but those are the very areas Hussain would assumedly seek to avoid. Hussain did not show that there is restricted freedom of movement in other regions.

Hussain also cannot successfully argue that relocation is unreasonable because the country at large is subject to generalized violence, because he did not show he is at risk of country-wide *targeted* persecution. As the BIA noted, violent attacks were less prevalent in other areas outside of Hussain's hometown. No country is immune from generalized violence. Every country, even our own, has been subjected to some instances of "generalized" violence. For example, we have seen our own violent terrorist attacks, robberies and muggings targeting unfortunate passersby, and riots resulting in destroyed properties, looting, and physical injuries. Acknowledging that a particular country is currently plagued by generalized crime and violence cannot be a basis for granting asylum to any citizen of that country in the United States.

By failing to show either past personal persecution or that it would be unreasonable to expect him to relocate to avoid future persecution, Hussain failed to provide evidence to compel reversal of the BIA's decisions to deny asylum

and withholding of removal.  *See Gonzalez-Hernandez v. Ashcroft*, 336 F.3d 995, 1001 n.5 (9th Cir. 2003).

## V.  CAT PROTECTION

To succeed on a claim under CAT, Hussain must show it is "more likely than not that he . . . would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).  Hussain was required to show that he faces a "particularized threat" of torture, *Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (citation omitted), and as discussed above, he failed to make that showing.  More crucially, Hussain never alleged, in the record or in his testimony, that he ever suffered any harm—"severe pain or suffering"—that rose to the level of torture.  8 C.F.R. § 1208.18(a)(1).  Substantial evidence supports the BIA's determination that Hussain cannot meet his burden to obtain CAT protection.[8]

## VI.    CONCLUSION

The IJ ensured Hussain received due process by providing multiple opportunities to testify regarding his experiences with the Taliban in Pakistan.  Hussain never alleged he was personally targeted by the Taliban and his testimony was consistent with an environment of

---

[8] Hussain argues the country conditions report should fulfill his burden under CAT.  A report describing general persecution "is insufficient to compel the conclusion that *Petitioner* would be tortured if returned."  *Jiang v. Holder*, 754 F.3d 733, 740 (9th Cir. 2013).  Nor do Hussain's allegations that the government did not respond to the 2007 Taliban attack suffice, as the Pakistan government "does not 'acquiesce' to torture where the government actively, albeit not entirely successfully, combats the illegal activities."  *Del Cid Marroquin v. Lynch*, 823 F.3d 933, 937 (9th Cir. 2016).

generalized violence.  The BIA's conclusion that he failed to meet the burden for either asylum or withholding of removal was supported by substantial evidence.  So too was its determination that Hussain did not show that safe relocation within Pakistan was unreasonable and that he failed to meet his burden under CAT.

**PETITION DENIED**.