NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 22 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BIR NARAYAN PUN,

Petitioner,

v.

MERRICK GARLAND, U.S. Attorney
General,

Respondent.

No.  18-72492

Agency No. A213-081-170

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 3, 2021[**]
Pasadena, California

Before: HIGGINSON,[***] HURWITZ, and COLLINS, Circuit Judges.
Dissent by Judge COLLINS

Bir Narayan Pun, a native and citizen of Nepal, seeks review of a final order

of removal. The Board of Immigration Appeals ("BIA") dismissed an appeal of an

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Stephen A. Higginson, United States Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

immigration judge's ("IJ") order denying Pun's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252.

We review the BIA's legal conclusions de novo and its factual findings for substantial evidence. *Ayala v. Holder*, 640 F.3d 1095, 1096-97 (9th Cir. 2011). Under the substantial evidence standard, we may reverse the BIA only if the evidence compels the conclusion that Pun meets the requisite standard for obtaining relief. *Reyes v. Lynch*, 842 F.3d 1125, 1137 (9th Cir. 2016); 8 U.S.C. § 1252(b)(4)(B). We deny the petition for review.

1.a. Pun first argues that the BIA erred in concluding that he had not established any past persecution was inflicted by the government or by sources the government is unable or unwilling to control. We disagree. An asylum applicant bears the burden of demonstrating eligibility for relief. 8 C.F.R. § 1208.13(a). The applicant can demonstrate such eligibility by establishing either past persecution or a well-founded fear of future persecution. 8 U.S.C. § 1101(a)(42)(A); *de Leon-Barrios v. I.N.S.*, 116 F.3d 391, 393 (9th Cir. 1997). To qualify as persecution, an act must be inflicted by either the government or persons or organizations the government is unable or unwilling to control. *Barrios v. Holder*, 581 F.3d 849, 854 (9th Cir. 2009).

Substantial evidence supports the IJ's finding that Pun failed to show the

government's unwillingness or inability to control the Maoist Communist Party members who beat him. Pun stated before the IJ that he did not report his beatings to the police. Although a failure to report is not fatal to an asylum claim, an applicant should show that the government would have been unwilling or unable to assist him if he had made a report. *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1064-67 (9th Cir. 2017) (en banc).  Despite Pun's assertion to the IJ that contacting the police would have been futile, Pun also testified that the police would protect him if they saw him being harmed by Maoists, and stated in his credible fear interview that the Nepali police were not working with the Maoists, that they would not "look the other way" if they observed him being abused by Maoists, and that a report would likely prompt a police investigation. The record also shows that the Nepali government has arrested Maoists for extortion. The record thus does not compel the conclusion that contacting the Nepali police would have been futile, and the BIA did not err in concluding that Pun failed to establish past persecution.

b. Pun next asserts that the BIA erred in concluding that he had failed to establish a well-founded fear of future persecution because he did not establish that it would be unreasonable for him to relocate within Nepal. We agree with the BIA. Because Pun failed to establish past persecution, Pun did not merit a presumption of future persecution. *See* 8 C.F.R. § 1208.16(b)(1)(i); *Mutuku v. Holder*, 600 F.3d

3

1210, 1213 (9th Cir. 2010). Absent such a presumption, Pun bore the burden of establishing that it would be unreasonable for him to avoid harm by relocating within Nepal. 8 C.F.R. § 1208.13(b)(3)(i); *Hussain v. Rosen*, 985 F.3d 634, 649 (9th Cir. 2021).

The BIA did not err in concluding that Pun failed to meet this burden. The record shows that following his beatings, Pun continued to live in Nepal for over two years without any subsequent incident involving Maoists, and the record does not indicate that Maoists looked for Pun during that time. Further, Pun's family members, some of whom Pun described as "active supporters" of the Congress Party, continue to reside in Nepal. *See Tamang v. Holder*, 598 F.3d 1083, 1087, 1094 (9th Cir. 2010). The evidence does not compel the conclusion that it would be unreasonable for Pun to avoid harm by relocating within Nepal.

2. Because the BIA did not err in concluding that Pun has not met the burden of proof for asylum, Pun has not met the higher burden for withholding of removal. *See Pedro-Mateo v. I.N.S.*, 224 F.3d 1147, 1150 (9th Cir. 2000).

3. Pun finally argues that the BIA erred in concluding that he had not established a clear probability of future torture, as required for CAT relief. We agree with the BIA's conclusion. An applicant for CAT protection must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is "an extreme

4

form of cruel and inhuman treatment" that is "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R §§ 1208.18(a)(1)-(2).

The record does not compel a conclusion that Pun is likely to suffer torture by, or at the instigation of, or with the consent or acquiescence of, a Nepali official. Although Pun asserted to the IJ that a police report would be futile, he previously stated that police would investigate if he made a report. The record further reflects that the Nepali government has previously arrested Maoists for engaging in extortion. Additionally, the BIA properly considered Pun's prior relocation within Nepal as relevant to his risk of future torture. 8 C.F.R. 1208.16(c)(3)(ii).

The petition for review is **DENIED**.

*Narayan Pun v. Garland*, No. 18-72492

COLLINS, Circuit Judge, dissenting:

In my view, substantial evidence does not support the agency's conclusion that Narayan Pun failed to establish past persecution. And because that error vitiates the agency's adverse findings concerning future persecution, I think that the petition for review should be granted and the matter remanded to the Board of Immigration Appeals ("BIA"). Because the majority concludes otherwise, I respectfully dissent.

1. In 2013, Narayan Pun, who was active in Nepal's Congress Party, was attacked by Maoists, and he suffered injuries that left him in medical clinics for more than a week. The Immigration Judge ("IJ") expressly held that the harm inflicted on Narayan Pun during this incident amounted to "persecution on account of an enumerated ground." But the IJ nonetheless held that Narayan Pun had not experienced persecution within the meaning of the Immigration and Nationality Act, because Narayan Pun had "not demonstrated that the harm he suffered was done by the government or forces the government is unable or unwilling to control." In supporting the latter determination, the IJ reasoned that, although his testimony was credible, Narayan Pun's assertions "that he did not contact the police because the Maoists hold government positions and that the police wouldn't do anything in any event" were contradicted both by Narayan Pun's responses at

his credible fear interview and by country reports for Nepal. The BIA summarily affirmed on this issue, without addressing (or even showing any awareness of) Narayan Pun's challenge to the IJ's analysis on this score in his brief before the BIA. The majority upholds the agency's determination as supported by substantial evidence, *see* Memo. Dispo. at 3, but I disagree.

Neither of the asserted contradictions identified by the IJ holds water. First, the IJ concluded that Narayan Pun's testimony that the police would not have done anything if he had reported the beating was "contradict[ed]" by his statement, at his credible fear interview, that if the police were to "*see* someone harming me, they will not look the other way." But there is no contradiction at all between (1) saying that the Nepali police would corruptly decline to adequately investigate an already completed crime by Maoists that is reported to them and (2) saying that the police would not stand by idly while a beating is occurring right in front of them. Indeed, Narayan Pun explicitly drew this precise distinction when pressed on the point in cross-examination at his hearing. The two propositions are simply not contradictory, and the IJ's conclusion that they were is unreasonable.

Second, the IJ also concluded that Narayan Pun's testimony that the police would not adequately *investigate* Maoist political violence was contradicted by two country reports stating that, in the run up to the 2013 elections, the Nepali government had responded with "vigorous action" to political violence associated

2

with Maoist "bandhs"—*i.e.*, general strikes. But, once again, the assertion that Nepali police would act to control open acts of politically-motivated street violence is entirely consistent with Narayan Pun's assertion that the police will respond to violence that happens in front of them. The assertion that Nepali police acted to control violent public demonstrations in 2013 simply does not "contradict" the quite different assertion that, due to corruption, the Nepali police will not bother to adequately *investigate* individual acts of Maoist violence that are reported to them *after the fact* by ordinary citizens. The two reports cited by the IJ do not address this latter question, and so they provide no support for the IJ's unreasonable finding of a "contradict[ion]." By contrast, the detailed country reports on Nepal from the Canadian government (which are also in the record) do address this latter point, and they describe evidence of political interference in police investigations in Nepal, including by Maoists.

Because the IJ's two stated reasons for his conclusion both fall apart on closer examination, there is no substantial evidence to support the IJ's determination that Narayan Pun had not shown that the Nepali government was unable or unwilling to control Maoist violence of the sort he experienced. *See Recinos De Leon v. Gonzales*, 400 F.3d 1185, 1189 (9th Cir. 2005) ("We may affirm the IJ only on grounds set forth in the opinion under review.").

2. The agency's error in its *past*-persecution holding prejudicially affected its analysis of the issue of *future* persecution. For example, if the agency had found that past persecution was established, then Narayan Pun would be entitled to a presumption of a well-founded fear of future persecution and would be eligible for asylum unless the *Government* carries its burden to rebut that presumption by showing either (1) that there has been a "fundamental change" in country circumstances or (2) that Narayan Pun could avoid future persecution by reasonably relocating within Nepal. *See* 8 C.F.R. § 1208.13(b)(1)(ii). Because the BIA instead explicitly placed the burden to show a well-founded fear of persecution on Narayan Pun, this conclusion is also flawed and should be set aside. Because, at a minimum, there is thus no basis to uphold the BIA's denial of asylum, the petition for review should have been granted and the matter remanded to the BIA.

I respectfully dissent.