NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 24 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AHMAD NAWAZ,

 Petitioner,

 v.

MERRICK B. GARLAND, Attorney
General,

 Respondent.

No.   20-72437

Agency No. A208-603-815

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 14, 2024*
Pasadena, California

Before:  W. FLETCHER, CHRISTEN, and VANDYKE, Circuit Judges.
Concurrence by Judge VANDYKE.

 Petitioner Ahmad Nawaz, a native and citizen of Pakistan, petitions for

review of the Board of Immigration Appeals' (BIA) order dismissing his appeal of

an Immigration Judge's (IJ) order denying his applications for asylum, withholding

of removal, and protection under the Convention Against Torture (CAT).  Because

the parties are familiar with the facts, we do not recount them here.

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

We have jurisdiction under 8 U.S.C. § 1252. Where, as here, the BIA adopts the IJ's reasoning, we review both decisions. *See Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1293 (9th Cir. 2018). We review legal conclusions de novo and factual findings for substantial evidence. *See Ruiz-Colmenares v. Garland*, 25 F.4th 742, 748 (9th Cir. 2022). We deny the petition.

1. The BIA's order concludes that "[t]here is no clear error in the Immigration Judge's findings of fact, including those relating to credibility, and we discern no errors of law in her decision." Our precedent "is quite clear that claims addressed on the merits by the BIA are exhausted." *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 874 (9th Cir. 2008). Because the BIA ruled on the IJ's findings of fact and conclusions of law that Nawaz challenges in his petition, including the agency's partial adverse credibility determination, we conclude that Nawaz exhausted his administrative remedies and proceed to evaluate his claims on the merits.

2. Substantial evidence supports the agency's partial adverse credibility determination. In particular, Nawaz's description of his membership and role in the Firka Jafaria expanded over the course of the proceedings, as did his testimony that he had been specifically singled out for harm. The details that Nawaz added embellished his original account. For example, in the initial telling, Nawaz did not mention being individually targeted on account of his work with Firka Jafaria

2

putting up posters and collecting donations, but he later claimed the attackers had been watching him put up posters for six months; that they tore down the posters; and, finally, that the attackers demanded that he not only leave his group but that he join their organization and take up collections on their behalf. "[O]missions are probative of credibility to the extent that later disclosures, if credited, would bolster an earlier, and typically weaker, asylum application." *Iman v. Barr*, 972 F.3d 1058, 1068 (9th Cir. 2020). The IJ's conclusion that Nawaz made "new allegations" that embellished his original story is supported by the record. Relatedly, though he had approximately two years to gather corroborating evidence, Nawaz's supplemental filings did not corroborate his membership and role in Firka Jafaria. To the contrary, some of his supplemental filings were inconsistent with his earlier accounts, and some raised separate doubts concerning his credibility, such as the affidavits he submitted from his parents and neighbors.

3. Substantial evidence supports the IJ's finding that the past harm inflicted at the July 10, 2015, public prayer gathering did not rise to the level of persecution. *See Hussain v. Rosen*, 985 F.3d 634, 647 (9th Cir. 2021) ("Unfulfilled threats are very rarely sufficient to rise to the level of persecution . . . ."). Because Nawaz did not show that he will be targeted for harm if he returns to Pakistan, the IJ correctly found that Nawaz did not have a well-found fear of future persecution. Accordingly, the agency did not err in denying Nawaz's claims for asylum and

3

withholding of removal. *See de Leon-Barrios v. I.N.S.*, 116 F.3d 391, 394 (9th Cir. 1997) ("Because the petitioners failed to satisfy the standard for asylum, they necessarily failed to satisfy the more rigorous standard for withholding of deportation.").

4. The BIA properly denied Nawaz's claim for CAT relief. Substantial evidence supports the IJ's finding that Nawaz did not show that he will be tortured by or with the acquiescence of the Pakistani government. This finding is additionally supported by the record because the harm at the prayer gathering did not rise to the level of torture, *see Davila v. Barr*, 968 F.3d 1136, 1144 (9th Cir. 2020) ("Torture is 'more severe than persecution.'" (quoting *Guo v. Sessions*, 897 F.3d 1208, 1217 (9th Cir. 2018))), and the IJ gave adequate reasons for discounting the supplemental affidavits Nawaz filed from his parents and neighbors to the alleged threats.

**PETITION DENIED.**

Judge W. Fletcher respectfully dissents.

*Ahmad Nawaz v. Merrick Garland*, No. 20-72437
VANDYKE, Circuit Judge, concurring:

I fully agree with the majority's merits analysis, and I agree that under our current caselaw we must reach the merits of this petition. But the precedent that controls our exhaustion analysis is clearly flawed. It rewards petitioners for avoiding BIA review by failing to properly present their arguments to the BIA. This in turn incentivizes petitioners to avoid presenting their issues to the BIA because they can potentially get years of additional adjudication of oftentimes meritless asylum claims—all while remaining in this country. We should fix this blinkered approach to exhaustion en banc.

In this case, Petitioner failed to timely present his arguments in a brief. And he never attempted to seek to have the untimeliness of his brief excused. Because Petitioner "raised no meaningful challenge to the [IJ's] denial of relief," the BIA was forced to try to spot any problems with the IJ's decision without any assistance from the petitioner. In a situation like that, it's hardly surprising that even if the IJ's decision had contained errors, the busy BIA would see "no clear error in the [IJ's] findings of fact" or "errors of law in her decision."

Unfortunately, our circuit precedent requires that, in a circumstance like this, essentially every issue broadly encompassed by the BIA's decision is deemed exhausted, even though the petitioner completely abdicated his duty in our

supposedly adversarial system to present any errors to the BIA. *See Abebe v. Gonzales*, 432 F.3d 1037, 1040–41 (9th Cir. 2005) (en banc).

This approach to exhaustion makes no sense. When a petitioner fails to make an argument before the BIA, even if the IJ actually committed some error, it is unlikely the busy BIA will catch and address that error without help from the petitioner unless the error is so obvious that it essentially jumps off the page. With nothing to go on except a few phrases in a notice to appear and the IJ's decision itself, the BIA is most likely to simply affirm the decision, even if it contains one or more non-obvious errors. Concluding that a petitioner in that situation has exhausted the arguments he is now presenting for the first time to this court defeats the very purposes of the exhaustion requirement—and it shifts the burden from the parties in the adversarial process to explain the issues for appeal to the BIA, forcing the agency to essentially sua sponte spot issues that were never actually presented to it. We don't ask that of our own court, and it is hypocritical and counterproductive to impose it on the agency's internal appeal process.

Finding exhaustion in this context creates another major problem: it produces an incentive for petitioners to lay behind the log before the BIA in the hope that the BIA will summarily affirm the IJ's decision as facially error-free. After all, why spend the time actually presenting a case to the BIA when *not* doing so could get you a ticket—stamped "exhausted"—directly to the Ninth Circuit. Then, after

convincing our court that the agency missed something the petitioner never presented to the agency, he gets to spend a few more years litigating what is more often than not a meritless case though another cycle at the agency and eventually back before our court. At that point, the petitioner has postponed his potential removal by years—all by gaming our bizarrely lax exhaustion precedent.

Absurd as that may be, though, that *is* our precedent. I agree with the majority that we are required by that precedent to reach the merits of this petition. And I agree with the majority's merits analysis. But we should correct this approach to exhaustion in immigration cases.